# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

VERVICIA HENDERSON; CRAIG HENDERSON; DEBORAH REESE; MARIE OUTING; RICHARD EIDEMILLER; CHRISTINE EIDEMILLER; PATRICIA RAMSEY; BRENDA JACKSON; CLIFFORD REYNOLDS JR.; EMILIO SAN MARTIN; ERIC RUTLEDGE; WENDY STONE; TOM STONE; KEVIN KIELY; KRISTEN SHEEN; BRENDAN HAVENS; JEFF KOZAK; BRIAN SLUSARZ; KRISTI HUJIK; HELEN TOSTI; JOHN TOSTI; ERIC SAPERSTEIN; ANA SAPERSTEIN; ARI SAPERSTEIN; JORDAN SCHURSKY; AUBREY CARP; HARRISON CARP-SCHURSKY; LAURA JUDA; MARK JUDA; ANDREW EBERT; BRENDA WHITE; DONALD GOERTZ; JENNIFER JOHNSON; DREW JOHNSON; BENJAMIN JOHNSON; PATRICIA ANDERSON; ARTHUR ANDERSON; DAVID BERRY; ADAM BRACKETT; ELIZABETH BRACKETT; MEREDITH BRUNELLE; JUSTIN BRUNELLE; DONNA DE MILT; VICTOR GOLDSCHMIDT; ELAINE GOLDSCHMIDT; LOGAN GOODSON; MICHAEL L. IACOVINO; DAWN IACOVINO; MICHAEL D. IACOVINO; MORGAN INNES; ANDREW INNES; BRIAN KEMP; KELLY KEMP; NAOYUKI KOMATSU; NAHO KOMATSU; RYO KOMATSU; MICHAEL MCGARRY; ANN MCGARRY; JEFFREY MUDDELL; STEPHANIE MUDDELL; RENEE ROSS; WILLIAM SIEGRIST; AMANDA SIEGRIST; AUSTIN SIEGRIST; CRISTINA TURK; JACK TURK; and THEODORE TURK,

    Plaintiffs,

v.

LOCKHEED MARTIN CORPORATION; NBCUNIVERSAL MEDIA, LLC; UNIVERSAL CITY PROPERTY MANAGEMENT COMPANY III, LLC; and UNIVERSAL CITY DEVELOPMENT PARTNERS LTD.,

    Defendants.

Case No.:

**LOCKHEED MARTIN CORPORATION'S NOTICE OF REMOVAL**

## **LOCKHEED MARTIN CORPORATION'S NOTICE OF REMOVAL**

Defendant Lockheed Martin Corporation removes to this Court *Henderson v. Lockheed Martin Corp.*, No. 2021-CA-004019-O (Fla. 9th Cir. Ct. 2021) (the "State Court Action"). Jurisdiction exists under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), as amended by the Removal Clarification Act of 2011.

## INTRODUCTION

1. Lockheed Martin is the United States Government's top defense contractor. For at least a decade, the U.S. Government has subcontracted more of its essential work to Lockheed Martin than any other company. This relationship traces back more than a century to military aviation support The Martin Company provided in World War I.

2. Since the 1950s, Lockheed Martin and its predecessors have performed many of their essential U.S. Government contracting services from the Sand Lake Road Complex ("SLRC") in Orlando—a location selected for its proximity to military operations at Cape Canaveral. At SLRC, Lockheed Martin has produced Pershing ballistic missiles deployed during the Cold War, Patriot and Hellfire missile systems deployed in the Gulf War, targeting and navigation systems deployed in multiple conflicts, and myriad other missile and fire-control systems ordered and deployed by the U.S. military.

3. These operations—all of which have been subject to exacting Government scrutiny and control—are the focus of this toxic-tort case. Plaintiffs claim that operations at SLRC have exposed them to hazardous concentrations of various

Page **2** of **19**

substances, resulting in personal injury, wrongful death, and a need for medical monitoring.

4. Plaintiffs are incorrect, but their allegations entitle Lockheed Martin to a merits determination in federal court. There is no aspect of SLRC's historic or current operations that the Plaintiffs have carved out of their sweeping Second Amended Complaint, which targets more than 60 years of activities, dozens of substances, dozens of allegedly related ailments, and almost every conceivable exposure pathway.

5. Because the wide net Plaintiffs have misguidedly cast encompasses operations that relate directly to Lockheed Martin's core work for the Government and consequently implicates multiple federal defenses, Lockheed Martin is entitled to have the claims against it adjudicated in federal court. Removal is therefore proper under 28 U.S.C. § 1442(a)(1).

## PROCEDURAL HISTORY

6. This action is the successor to *San Martin v. Lockheed Martin Corp.*, No. 6:20-cv-1769-37GJK (M.D. Fla. 2020), which was dismissed pursuant to Rule 41(a)(2). All former *San Martin* plaintiffs, and others, are current Plaintiffs.

7. On April 19, 2021, Plaintiffs filed their original Complaint in the Ninth Judicial Circuit, in Orange County, Florida. Plaintiffs filed a First Amended Complaint on May 7 and moved to amend again on June 9. Plaintiffs then served Lockheed Martin with the First Amended Complaint on July 20. On July 30, the state court granted Plaintiffs' motion to amend and deemed the proposed Second Amended Complaint filed as of that date.

8. Removal is therefore timely under 28 U.S.C. § 1446(b)(1) because Lockheed Martin files this notice of removal within 30 days of being served on July 20.

9. In accordance with Local Rule 1.06 and pursuant to 28 U.S.C. § 1446(a), Lockheed Martin contemporaneously submits true and legible copies of all pleadings and papers on file with the state court. Lockheed Martin has not yet filed an answer or motion to dismiss in the State Court Action, nor, as of the date of this Notice, has any other Defendant.

10. Pursuant to 28 U.S.C. § 1446(d), Lockheed Martin is serving written notice of the removal of this action on Plaintiffs' counsel and counsel for all Defendants. A copy of that notice will be promptly filed with the Clerk of the Ninth Judicial Circuit.

11. Venue is proper because Lockheed Martin is removing the State Court Action from the Ninth Judicial Circuit, in and for Orange County, which is in the Orlando Division of the Middle District. *See* Local Rule 1.04(a); 28 U.S.C. § 1446(a).

## BACKGROUND

**I.    Plaintiffs' claims**

12. This is a toxic-tort case. The Plaintiffs allegedly lived or worked near SLRC and claim to have been exposed to toxic substances as a result.

13. Plaintiffs focus on SLRC's weapons-manufacturing history,[1] contending that those operations "utilize chemicals that are among the most toxic to human health

---

[1] *See, e.g.*, Second Am. Compl. ¶ 2 ("The Orlando Facility manufactures weaponry and associated components and began operations in 1957"), ¶ 105 ("Throughout the course of its

on earth, and require the utmost care and handling." (Second Am. Compl. ¶ 2.) According to Plaintiffs, Lockheed Martin's handling, transportation, storage, use, emission, and disposal of those substances over the last six-and-a-half decades exposed the Plaintiffs to the substances and consequently harmed them. (*See, e.g.*, *id.* ¶¶ 192–93, 268, 281, 288, 302, 316, 344.) Plaintiffs further claim that environmental remediation activities conducted at SLRC exacerbated these alleged exposures. (*Id.* ¶¶ 173–74, 189.)

14. Plaintiffs repeatedly make clear that their claims are based both on historic and current SLRC operations.[2]

## II. Operations at SLRC

15. Lockheed Martin is one of the United States Government's largest private defense contractors. It has repeatedly held the number-one position on the

---

operations, the Orlando Facility has been used to manufacture heavy weaponry and artillery, including nuclear capable Pershing ballistic missiles, nuclear capable Sprint antiballistic missiles, Walleye and Bullpup guided missiles, Lacrosse and Patriot surface to air missiles, and Hellfire air to surface missiles.").

[2] *See, e.g.*, *id.* ¶ 106 (claiming that Lockheed Martin has been "storing, utilizing and disposing of toxic chemicals for process operations" and that those "*operations continue to this day*, and result in the generation and emission of numerous tons of hazardous air pollutants and VOCs each year" (emphasis added)), ¶ 124 (asserting that "Lockheed Martin's *ongoing operations continue to utilize* large volumes of VOCs, hazardous air pollutants, and other toxic substances," and "[t]hese operations have resulted in further emissions of harmful chemicals and additional exposure to Plaintiffs" (emphasis added)), ¶ 192 ("At all relevant times, Lockheed Martin's ongoing operations at the Orlando Facility resulted in the generation of additional toxic wastes."), ¶¶ 192–93 (contending that they and "others in the community, did inhale, ingest, and come into dermal contact with toxic wastes generated by Lockheed Martin's *ongoing* operations at the Orlando Facility," and that "[a]s result of these exposures to Lockheed Martin's toxic wastes, Plaintiffs suffered injuries.").

U.S. General Services Administration's Top 100 Contractors Report.  (Ex. A, Leckie Decl. ¶ 3.)

16.  Lockheed Martin's and its predecessors have operated SLRC since the late 1950s.  The complex was originally run by The Martin Company, which through merger was succeeded by Martin Marietta Corporation in 1961.  In 1994, Martin Marietta and Lockheed Corporation agreed to combine to form Lockheed Martin Corporation.  (*Id.* ¶ 4.)

17.  Lockheed Martin and its predecessors have consistently used operations at SLRC to satisfy their obligations to the United States under procurement and other contracts.  These contracts required the production of missiles, fire-control systems, and other equipment for the U.S. military.  (*Id.* ¶ 5.)

18.  Lockheed Martin's major missile programs and related manufacturing contracts have always been originally designed for the U.S. Department of Defense and subject to detailed production specifications, to which Lockheed Martin has adhered.  (*Id.* ¶ 6.)

19.  In many contracts, the U.S. Government has had direct oversight of the materials used to manufacture the missiles.  Some contracts provided for Government indemnification under Public Law 85-804 for unusually hazardous risks, including risks relating to toxic properties of chemicals utilized for the performance of the contracts.  (*Id.* ¶ 7.)

20. Major missile programs that involved missile manufacturing contracts performed at SLRC include the Bullpup, Pershing, Sprint, Patriot, and Hellfire missile systems. (*Id.* ¶ 8.)

21. In all of these missile programs, U.S. Department of Defense representatives have inspected and tested the subcomponents at SLRC prior to acceptance to ensure compliance with all military specifications. The Department of Defense has also frequently provided Lockheed Martin with government furnished equipment ("GFE") to help carry out these contracts. The Defense Contract Management Agency ("DCMA") and Defense Contract Audit Agency "(DCAA") maintain a permanent embedded presence at SLRC. (*Id.* ¶ 9.)

22. Manufacturing, testing, and other processes undertaken at SLRC necessarily result in emissions of substances relating to these operations. Lockheed Martin is not aware any instance in which it knew a of danger related to its manufacturing that was not also known to the U.S. Government. (*Id.* ¶ 10.)

23. Thus, through its procurement relationships with Lockheed Martin and its predecessors, the U.S. military has maintained an embedded oversight presence through DCMA and DCAA activity and has continually overseen the manufacture, performance, safety, maintenance, and mission-accomplishment of missile, fire-control, and other systems produced at SLRC. (*See id.* ¶ 11.)

## BASIS FOR JURISDICTION

24. This Court has subject matter jurisdiction pursuant to the federal officer removal statute, 28. U.S.C. § 1442(a)(1), as amended by the Removal Clarification Act

of 2011. The acts forming the basis of Plaintiffs' assertions were taken by Lockheed Martin or its predecessor companies pursuant to federal authority and under color of federal office. Lockheed Martin also has two colorable federal defenses, which were previously asserted in *San Martin*.

25. Moreover, "Section 1442(a)(1) creates special ancillary jurisdiction over the state claims, and 'district court may take the entire case, even if it would not have jurisdiction over any of the claims against a codefendant.'" *Buchinger ex rel. Est. of Buchinger v. Garlock, Inc.*, No. 3:05-cv-118-RV-MD, 2005 WL 2338801, at *2 (N.D. Fla. Sept. 23, 2005) (quoting *Williams v. City of Atlanta,* 794 F.2d 624, 628 (11th Cir. 1986)).[3]

## I. Lockheed Martin removes this case pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

26. Federal officer removal allows a case to be removed to federal court even if the case could not have been filed there originally. The statute provides:

> **(a)** A civil action or criminal prosecution that is commenced in a State court and *that is against* or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> > **(1)** The United States or any agency thereof or *any officer (or any person acting under that officer)* of the United States or of any agency thereof, in an official or individual capacity, *for or relating to any act under color of such office* or on account of any right, title or authority

---

[3] Lockheed Martin need not obtain the consent of the other Defendants to remove the action pursuant to Section 1442(a)(1). *See Buchinger*, 2005 WL 2338801, at *2 ("Section 1442(a) does not require GE to notify or obtain the consent of any other defendant in the action in order to remove the entire case to federal court.").

claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1) (emphasis added).

27. To remove under this provision, a defendant must satisfy these criteria: (1) it must be a person within the meaning of the statute; (2) it must have been "acting under" the United States, its officers, or its agencies; (3) the actions at issue must have been performed for or must have related to any act under color of federal authority; and (4) it must have a colorable federal defense. *Caver v. C. Alabama Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017).

28. "[U]nlike the general removal statute, 28 U.S.C. § 1441, which must be strictly construed in favor of remand, the federal officer removal statute is 'liberally construed' in favor of granting federal officers and agencies (and those acting under federal officers and agencies) access to a federal forum in which to litigate the merits of defenses arising from their official duties." *In re 3M Combat Arms Earplug Products Liab. Litig.*, No. 3:19-md-2885, 2020 WL 365617, at *2 (N.D. Fla. Jan. 22, 2020) (citations omitted). Indeed, removal under Section 1442 is one of the few situations when a remand order may be appealed. 28 U.S.C. § 1447.

### A. Lockheed Martin is a person under Section 1442.

29. To remove under Section 1442, a defendant must show that it is a "person" under the statute. A "corporation constitutes a person for the purposes of determining whether federal officer removal jurisdiction exists." *Assocs. Rehab.*

*Recovery, Inc. v. Humana Med. Plan, Inc.*, 76 F. Supp. 3d 1388, 1391 (S.D. Fla. 2014). Thus, Lockheed Martin Corporation satisfies this requirement.

### B. Lockheed Martin "acted under" the United States, its officers, or its agencies.

30. Courts liberally construe and broadly interpret Section 1442's "acting under" requirement. *Caver*, 845 F.3d at 1142. To succeed on this prong, a defendant must act under the "subjection, guidance, or control" of the federal officer or agency. *Id.* at 1143. In making this determination, courts consider whether the defendant helped fulfill a "basic governmental task that the government otherwise would have had to perform." *Id.* at 1143.

31. Government contractors routinely meet this standard, as "[t]he assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *See Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153 (2007) (discussing how "providing the Government with a product that it used to help conduct a war" can satisfy the "acting under" test (citing *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998))).

32. Here, Lockheed Martin and its predecessors are government contractors that have entered into numerous procurement contracts with the Government for the development and production of missiles and other defense systems. (Leckie Decl. ¶¶ 3, 5.) The U.S. military has overseen the manufacture, performance, safety, maintenance, and mission accomplishment of missiles and other defense systems

through its continuing purchases since the opening of the SLRC approximately 60 years ago. (*See id.* ¶ 11.) In many of those procurement contracts, the U.S. Government had direct insight and oversight of the actual materials used in the manufacturing process. (*Id.* ¶ 7.) As the military mandated that the production of such equipment conform to its specifications, Lockheed Martin has acted under the subjection, guidance, and control of the Government when fulfilling these contracts. (*Id.* ¶¶ 6, 7, 12.)

33. Additionally, the equipment produced by Lockheed Martin is anything but "off the shelf," but instead missiles and other systems that are developed for war efforts and other military use. Engaging in war and military exercises is a uniquely governmental function, and the products made by Lockheed Martin are complex systems produced for that purpose. If Lockheed Martin did not produce these systems, then the government would have to perform that task. Lockheed Martin was thus acting under the U.S. Government when performing the acts related to Plaintiffs' allegations.

### C. Plaintiffs' claims relate to actions Lockheed Martin and its predecessors have taken under color of federal authority.

34. The next prong requires the Plaintiffs' claims to relate to "any act under color" of federal authority. Prior to 2011, the federal officer removal statute required a defendant "to establish that the plaintiff's suit was *for* any act under color of federal office." *In re 3M Combat Arms Earplug Products Liab. Litig.*, 2020 WL 365617, at *4 n.13 (cleaned up). This "required a showing that the acts for which [defendants] were being

sued occurred at least in part *because of* what they were asked to do by the government." *Id.*

35. In the Removal Clarification Act of 2011, however, Congress amended the statute to add the phrase "or relating to." *Caver*, 845 F.3d at 1144 n.8. "The phrase 'relating to' is broad and requires only 'a connection or association between the act in question and the federal office.'" *Id.* at 1144 (quoting *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 471 (3d Cir. 2015)).[4] Importantly, this change expanded the scope of the statute and allowed more opportunities for federal officer removal. *Id.* at 1144 n.8.

36. "The hurdle erected by this requirement is quite low . . . ." *Id.* (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008)). And if there are disputes about "whether certain acts were specifically directed by the government," those disputes "are properly resolved by federal, not state, courts." *In re 3M Combat Arms Earplug Products Liab. Litig.*, 2020 WL 365617, at *4.

37. In the toxic-tort context, the "relating to" requirement is met if an alleged exposure is associated with manufacturing operations performed under color of law,

---

[4] Although some portions of *Caver* suggest that the Eleventh Circuit "stopped short of abandoning the 'causal connection' test," the holding and reasoning make clear that the court "essentially implemented a connection rationale for removal." *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944 (7th Cir. 2020) (quoting *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc)). This is consistent with other circuit courts that have analyzed the federal officer removal statute after the 2011 amendment and likewise concluded that the more liberal "connection or association" test applies now. *See id.*; *Latiolais*, 951 F.3d at 296; *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017).

such as manufacturing efforts performed in support of Government wartime efforts. The Seventh Circuit's *Baker* decision is instructive. *See* 962 F.3d at 940.

38.  In *Baker*, former residents of a public housing complex alleged that industrial manufacturing companies and their predecessors had "polluted the soil at and around their modern-day building, exposing the residents to hazardous substances like lead and arsenic." *Id*. at 940. The defendant companies removed under the federal officer statute, asserting that the plaintiffs' pollution allegations related to assistance their predecessors provided to the United States during World War II. *See id.* at 939–40 ("During World War II, the companies argue, the United States government directed them to produce certain materials for the military, supervised distribution of these goods, and controlled their ultimate usage."). After the district court remanded, the Seventh Circuit reversed, concluding that the defendants had sufficiently shown a connection or association between their wartime work for the government and the harm alleged. *Id.* at 943–45 ("Simply stated, the Companies did not need to allege that the complained-of conduct *itself* was at the behest of a federal agency. It is sufficient for the 'acting under' inquiry that the allegations are directed at the relationship between the Companies and the federal government." (cleaned up)).

39.  Like the claims in *Baker*, Plaintiffs' exposure allegations here relate to manufacturing operations performed for and under the oversight of the Government. Plaintiffs claim that those current and former operations exposed them to hazardous concentrations of substances emitted from SLRC. (*See*, e.g., Second Am. Compl. ¶¶ 106, 124, 186, 192–93.) As discussed above, those operations were the direct result of

procurement and other contracts between Lockheed Martin and the Government. (Leckie Decl. ¶ 6.) Plaintiffs' claims are therefore "directed at the relationship between [Lockheed Martin] and the federal government," satisfying the "relating to" requirement. *See Baker*, 962 F.3d at 945 (quoting *Def. Ass'n of Philadelphia*, 790 F.3d 457, 470 (3d Cir. 2015)).

40. Even under the outdated, more-limited causal nexus test, Lockheed Martin would have succeeded. Plaintiffs alleged harm is supposedly caused by Lockheed Martin's general operations and emissions, which occur *because of* Lockheed Martin entering into and performing under U.S. Government contracts. As a result, Lockheed Martin would have satisfied this prong under the causal-nexus test based solely on Plaintiffs' reliance on operations as a reason for their alleged harm.

41. Although unnecessary based on Plaintiffs' allegations related to operations, Lockheed Martin can also satisfy this prong as to the remediation and waste-disposal allegations in the Second Amended Complaint because such actions are intertwined with Lockheed Martin's government contract work. Manufacturing and testing weaponry necessarily produce emissions and wastes. (Leckie Decl. ¶ 10.) And it is because Lockheed Martin was complying with its government contracts that it produced, emitted, and remediated substances targeted by Plaintiffs' claims. These historic activities are therefore directly connected and associated with Lockheed Martin's acts under color of federal authority.

### D. Lockheed Martin has two colorable federal defenses: (1) the federal contractor defense and (2) derivative sovereign immunity.

42. The final requirement for federal officer removal is a colorable federal defense. The "defense need only be plausible; its ultimate validity is not to be determined at the time of removal." *Caver*, 845 F.3d at 1145 (quoting *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996)). "Federal officer removal is [] an exception to the well-pleaded complaint rule, as 'the federal-question element is met if the defense depends on federal law.'" *Id.* (quoting *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999)). As the purpose of the removal statute is to allow the validity of the federal defense to be tried in federal court, the "law does not require that the removing defendant virtually win his case before it can be removed." *Id.*

#### 1. Lockheed Martin raises a colorable federal contractor defense.

43. The federal contractor defense addresses the potential for conflicts between state laws and unique federal interests. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504–07 (1988). It provides a form of preemption that applies "when the imposition of liability under state law would create a 'significant conflict' with federal policy in an area of 'uniquely federal interest.'" *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1333 (11th Cir. 2003) (quoting *Boyle*, 487 U.S. at 507).

44. One such "area of uniquely federal interest is the procurement of equipment by the United States." *Id.* For that reason, "the enforcement of state tort law against military contractors must be preempted inasmuch as its operation would interfere with the exercise of discretion by government officials charged with making

these sensitive policy judgments," including the "selection of the appropriate design for military equipment." *Id.* at 1334 (citing *Boyle*, 487 U.S. at 511).

45.  Although the federal contractor defense was first recognized in products liability cases, *see Boyle*, 487 U.S. at 502, the "analysis it requires is not designed to promote all-or-nothing rules regarding different classes of contract," *Hudgens*, 328 F.3d at 1334. In toxic-tort cases, the defense colorably applies to alleged exposures that relate to the manufacture of "any product supplied for government use so long as it conformed to the government's 'reasonably precise specifications.'" *See Baker*, 962 F.3d at 946.

46.  Here, Lockheed Martin has a colorable federal contractor defense to some or all of Plaintiffs' claims. They attempt to impose tort liability under state law for, among other things, the "[h]andling, storing, utilizing, disposing, and emitting" of substances used in manufacturing operations performed at SLRC as part of procurement contracts with the Government. (*See, e.g.*, Second Am. Compl. ¶ 269.) Lockheed Martin conducted these operations in conformance with detailed specifications created or approved by the Government, often using equipment provided by the Government, and subject to Government oversight and control over the process and material-selection. (Leckie Decl. ¶¶ 6, 7, 9.) Lockheed Martin is not aware of any instances in which it has known of a danger related to its manufacturing that was not also known to the U.S. Government. (*Id.* ¶ 10.)

47. Moreover, Plaintiffs attempt to impose state tort liability for the U.S. Government's foundational decision to use SLRC for military manufacturing, asserting:

> Manufacturing ballistic missiles, lethal weaponry, war equipment, and component parts is not a manner of common usage but is an extraordinarily rare and unusual enterprise. Likewise, it was completely inappropriate for Defendant Lockheed Martin to carry out these activities and use, handle, store, dispose of and emit toxic contaminants near populated areas.

(Second Am. Compl. ¶ 271.) Particularly given the history of SLRC's wartime contributions—and the tactical advantages provided by proximity to missile testing operations at Cape Canaveral—these and other claims place state tort law in conflict with sensitive, discretionary Government decisions regarding how and where to procure equipment and ordinance for the United States military.

48. Accordingly, Lockheed Martin has a colorable federal contractor defense.

### 2. Lockheed Martin raises a colorable derivative sovereign immunity defense.

49. Derivative sovereign immunity allows a contractor to share in the Government's immunity if the Government authorized an agency to perform a task and delegate it to a contractor, and the contractor then followed the Government's instructions. *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21–22 (1940). In the recent Supreme Court case *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), *as revised* (Feb. 9, 2016), the Court analyzed whether a federal contractor could have derivative immunity from TCPA claims and determined that contractors may share in the

Government's immunity, if the contractor follows the Government's instructions and does not violate federal law. *Id.* at 166–67.

50. Manufacturing missiles and other military defense systems is a government function that was validly delegated to Lockheed Martin pursuant to contracts with the U.S. Government. (*See* Leckie Decl. ¶¶ 5– 7, 11.) When conducting the work Plaintiffs alleged caused emissions, Lockheed Martin acted under this delegation of governmental authority. The government had direct insight and oversight into the materials used in performance of these contracts, and it required that work be done according to strict specifications. (*Id.* ¶¶ 6–7, 11.) The government also remained involved with the manufacturing by, among other things, maintaining a presence at SLRC, providing equipment, and inspecting the facility and final products. (*Id.* ¶ 9.) Finally, Lockheed Martin complied with the government's instructions and federal law when engaging in work on its behalf. (*Id.* ¶ 6)

51. Because the government validly conferred authority on Lockheed Martin to act on its behalf and Lockheed Martin followed the government's instructions, it asserts a colorable derivative sovereign immunity defense.

## CONCLUSION

52. On the grounds set forth above, Lockheed Martin removes this case under the federal officer removal statute, 28. U.S.C. § 1442(a)(1), which affords Lockheed Martin a right to have the claims against it resolved in federal court.

[*Signatures and certificates of counsel below*.]

Dated: August 19, 2021

Francis A. Citera*
citeraf@gtlaw.com
Gretchen N. Miller*
millerg@gtlaw.com
**GREENBERG TRAURIG, LLP**
77 West Wacker Dr., Ste. 3100
Chicago, Illinois 60601
Telephone: (312) 456-6583
Facsimile: (312) 899-0320

*special admission motion forthcoming*

Respectfully submitted,

/s/ David B. Weinstein
David B. Weinstein (FBN 604410)
weinsteind@gtlaw.com
Christopher Torres (FBN 0716731)
torresch@gtlaw.com
Ryan T. Hopper (FBN 0107347)
hopperr@gtlaw.com
Jillian M. Askren (FBN 121773)
askrenj@gtlaw.com
Raymond Jackson (FBN 1028350)
jacksonra@gtlaw.com
Christopher R. White (FBN 1022219)
whitech@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Blvd., Ste. 1900
Tampa, Florida 33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900

*Attorneys for Defendant Lockheed Martin Corporation*

## CERTIFICATE OF SERVICE

I certify that on August 19, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ David Weinstein
Attorney

*ACTIVE 58953760*