## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

VERVICIA HENDERSON et al.,

     Plaintiffs,

v.

LOCKHEED MARTIN CORPORATION et al.,

     Defendants.

Case No. 6:21-cv-1363-37DCI

## LOCKHEED MARTIN'S MOTION FOR SUMMARY JUDGMENT ON SPECIFIC CAUSATION AND OTHER ISSUES

Pursuant to Federal Rule of Civil Procedure 56 and this Court's Case Management and Scheduling Order, Lockheed Martin Corporation ("LMC") moves for summary judgment on the issue of specific causation for all pending claims in Bellwether Group I and on the statutes of limitation for the claims of Plaintiffs Donna DeMilt, Brian Kemp, Naoyuki Komatsu, Ryo Komatsu, Naho Komatsu, Michael McGarry, Ann McGarry, Eric Saperstein, Ana Saperstein, Ari Saperstein, Kirsten Sheen, Wendy Stone, and Eric Rutledge.

## SUMMARY

Plaintiffs have failed to establish a genuine issue of material fact on causation.

They previously failed to create a genuine issue of material fact on **general causation**, which is to say they never established that the chemicals at issue here could cause their alleged health outcomes at any dose—let alone establish how much would have to be inhaled for how long to pose a material risk of disease. This is unsurprising,

as no existing scientific literature supports a causal link between Plaintiffs' various health conditions and the substances to which they claim to have been exposed.[1]

Now Plaintiffs have failed to establish a genuine issue of material fact on **specific causation**—they have not introduced evidence from which reasonable jurors could non-speculatively conclude that chemicals from LMC's Sand Lake Road Complex ("SLRC") actually caused their diseases. To aid the Court, the following table identifies each Plaintiff in Bellwether Group I in alphabetical order, the health outcome each alleged, and the specific-causation experts on whom each relies:

| Plaintiff | Alleged Health Outcome | Experts Relied On |
|---|---|---|
| **Berry, David** | Testicular cancer | Sahu, Panigrahy, Schmidt |
| **DeMilt, Donna** | Multiple Sclerosis | Sahu, Kantor |
| **Hujik, Kristi** | Multiple Sclerosis, infertility | Sahu, Kantor |
| **Innes, Andrew** | Loss of consortium (Innes, Morgan) | N/A |
| **Innes, Morgan** | Hodgkin's lymphoma | Sahu, Panigrahy, Schmidt |
| **Kemp, Brian** | Hairy cell leukemia | Sahu, Panigrahy, Schmidt |
| **Kemp, Kelly** | Loss of consortium (Kemp, Brian) | N/A |
| **Komatsu, Naho** | Loss of consortium (Komatsu, Naoyuki and Ryo) | N/A |
| **Komatsu, Naoyuki** | Acute lymphoblastic leukemia, thyroid disorder, loss of consortium (Komatsu, Ryo) | Sahu, Panigrahy, Schmidt |
| **Komatsu, Ryo** | DiGeorge syndrome | Sahu, Warburton |

---

[1]   At the general causation stage, Plaintiffs asserted that their health outcomes were caused by either PCE, TCE, TCA, styrene, hexavalent chromium, arsenic, toluene, xylene, formaldehyde. This was a reduction from the over 30 chemicals cited in the Complaint.  They have now further narrowed their claims to PCE, TCE, styrene, hexavalent chromium, or arsenic as causes.

| Plaintiff | Alleged Health Outcome | Experts Relied On |
|---|---|---|
| **McGarry, Ann** | Loss of consortium (McGarry, Michael) | N/A |
| **McGarry, Michael** | Parkinson's disease | Sahu, Kantor |
| **Rutledge, Eric** | Multiple Sclerosis | Sahu, Kantor |
| **Saperstein, Ana** | Abnormal pregnancy, premature labor, pain and suffering due to abnormal pregnancy, loss of consortium (Saperstein, Ari and Eric) | N/A |
| **Saperstein, Ari** | Ectodermal dysplasia, syndactyly of fingers and toes, missing portion of middle finger, extra toe, missing tear ducts | Sahu, Warburton |
| **Saperstein, Eric** | Multiple Sclerosis, Loss of consortium (Saperstein, Ari) | Sahu, Kantor |
| **Sheen, Kirsten** | Breast cancer | Sahu, Panigrahy, Schmidt |
| **Stone, Wendy** | Breast cancer, ovarian/uterine issues | Sahu, Panigrahy, Schmidt |

Reliable expert testimony is required to establish causation in a toxic-tort case. For the reasons stated in LMC's contemporaneously filed *Daubert* Motions, Plaintiffs' proffered specific-causation testimony is all unreliable. Thus, the cancer Plaintiffs' claims fail because key opinions from Drs. Panigrahy and Schmidt are inadmissible. The same is true of the multiple sclerosis and Parkinson's disease Plaintiffs' claims, which turn on Dr. Kantor's inadmissible opinions, and the DiGeorge syndrome and ectodermal dysphasia claims that depend on Dr. Warburton's inadmissible opinions.

But even if these experts' specific-causation opinions were admissible, they still fail to provide a reasonable basis for non-speculative specific-causation conclusions.

Years into this litigation, no expert has even attempted to establish either "scientific knowledge of the harmful level of exposure to a chemical" or "knowledge that plaintiff was exposed to such quantities"—both of which are "minimal facts necessary to sustain the plaintiff's burden." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1241 (11th Cir. 2005). Their dose-response assessments are nonexistent or equivocal, untethered to any concentrations (let alone durations) addressed in scientific literature. As a result, Plaintiffs' experts have never established the "minimal facts" essential to any valid toxic-tort claim, and their opinions reduce to unscientific speculation. This, on its own, is enough to grant summary judgment for LMC.

Finally, the claims of Plaintiffs Donna DeMilt, Brian Kemp, Naoyuki Komatsu, Ryo Komatsu, Naho Komatsu, Michael McGarry, Ann McGarry, Eric Saperstein, Ana Saperstein, Ari Saperstein, Kirsten Sheen, Wendy Stone, and Eric Rutledge are barred by the statute of limitations and must be dismissed.

## UNDISPUTED AND MATERIAL FACTS

In their Complaint, Plaintiffs initially claimed to have been exposed to over 30 substances as a result of operations at SLRC. (*See* Doc. 89 ¶¶ 19–91 (Plaintiff-specific exposure allegations), 127–61 (identification of substances of concern).) They further claimed that those alleged exposures caused them or close family members to develop one or more of dozens of different adverse health conditions. (*Id.* ¶¶ 192–268.)

In its Case Management and Scheduling Order, this Court staggered discovery and briefing deadlines. (Doc. 81 at 4–5.) General-causation discovery, expert disclosures, and motions deadlines fell first, with specific-causation and other

deadlines following in three bellwether phases. (*See id.*) The parties selected the Plaintiffs named in the chart above for consideration in Bellwether Group I.

Plaintiffs in Bellwether Group I[2] proffered expert testimony on their alleged exposures to chemicals originating from SLRC and whether those chemicals caused their individual health outcomes. The Plaintiffs alleging cancers proffer Drs. Panigrahy and Schmidt and allege that their cancers were caused by TCE, PCE, styrene, hexavalent chromium, or arsenic. (*See* Docs. 310 and 311). The Plaintiffs alleging multiple sclerosis and Parkinson's disease proffer Dr. Kantor and allege their conditions were caused by TCE, PCE, or styrene. (*See* Doc. 309.) The Plaintiffs alleging chromosomal disorders proffer Dr. Warburton and allege their conditions were caused by TCE, PCE, or styrene. (*See* Doc. 312.) All the Plaintiffs rely on the opinion of Dr. Sahu to establish their alleged exposures. (*See* Doc. 316.)

## STANDARD

A court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). The evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

---

[2] The remainder of this Motion refers to Plaintiffs in Bellwether Group I simply as "Plaintiffs."

"Evidence inadmissible at trial cannot be used to avoid summary judgment." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1312 (11th Cir. 2014) (quoting *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007)).

## ARGUMENT

To meet their burden of production on factual causation, Plaintiffs in a toxic-tort case must proffer admissible evidence of "'exposure,' 'general causation,' and 'specific causation.'" *See* Restatement § 28 cmt. c(1). This Court bifurcated the proceedings and ordered motions on general causation in October 2022. (Doc. 81.) General causation requires Plaintiffs to prove that a "chemical *can* cause the harm plaintiff alleges." *McClain*, 401 F.3d at 1239. Plaintiffs failed to meet this standard because they "failed to introduce evidence from which a reasonable jury could conclude that an exposure to any relevant substance, at any exposure level, could *probably* have caused any relevant harm" and they did not proffer reliable expert testimony on the issue. (*See generally* Doc. 152.) Summary judgment on general causation is still warranted and would moot the remainder of this case.

However, Plaintiffs have failed the other two prongs of the analysis as well. They cannot reliably demonstrate exposure to any chemical from SLRC. "[H]uman exposure means contact with the chemical or agent . . . ."[3] The air modeling performed by Plaintiffs' expert, Dr. Sahu, does not reliably establish concentrations of relevant substances at the Golf Channel building, where Plaintiffs claim to have been exposed.

[3] https://www.epa.gov/sites/default/files/2014-11/documents/guidelines_exp_assessment.pdf

(Doc. 316.) But even if his opinions were reliable, he opined only on outdoor air concentrations at The Golf Channel building and then assumed all Plaintiffs were equally exposed indoors. This unsubstantiated assumption is insufficient.

Plaintiffs likewise failed to establish specific causation. Proving specific causation—that "exposure to an agent caused a particular plaintiff's disease"—requires reliable proof of exposure and general causation. *See* Restatement § 28 cmt. c(4). Accordingly, a failure on either of the previous steps causes a failure on specific causation. But Plaintiffs fail independently on specific causation as well. Plaintiffs cannot exclude the possibility that their diseases developed idiopathically or due to other alternative potential causes, and they lack expert testimony that could reliably establish exposures as the most likely cause.

Reliable expert testimony is required.  This is a toxic tort action, a case in which a plaintiff tries to prove a "civil wrong arising from exposure to a toxic substance." *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1196 n.6 (11th Cir. 2010) (citation omitted). Courts consistently require expert testimony "in cases where a jury is asked to assess complex medical or scientific issues outside the scope of a layperson's knowledge." *McCasland v. Pro Guard Coatings, Inc.*, 799 F. App'x 731, 733 (11th Cir. 2020); *see also Small v. Amgen, Inc.*, 723 F. App'x 722, 726 (11th Cir. 2018) ("Regarding discovery and proof of causation, in complex cases where a jury is asked to assess complex medical or scientific issues outside the scope of a layperson's knowledge, an expert's testimony is required."). In toxic tort cases, proof of causation "*requires expert testimony*." *McClain*, 401 F.3d at 1237 (emphasis added). Indeed, "[t]oxic tort cases,

such as this one, are won or lost on the strength of the scientific evidence presented to prove causation." *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1197 (11th Cir. 2002). Plaintiffs offer no reliable expert testimony on key causation issues, so their claims fail.

Further, "Florida has adopted a preponderance standard for causation in both negligence and strict liability actions; a mere possibility of causation is not enough." *Pierre v. Intuitive Surgical, Inc.*, 854 F. App'x 316, 319 (11th Cir. 2021) (citing *Hessen for Use & Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 647 (11th Cir. 1990)). Accordingly, even reliable expert testimony must still establish facts from which reasonable jurors could draw non-speculative inferences of probable specific-causation. For the reasons explained below, Plaintiffs cannot do this. This Court should grant summary judgment for Lockheed Martin on all counts.

## I.     Plaintiffs' claims for which they proffered no supporting expert testimony fail as a matter of law.

Plaintiffs have proffered no proof for several of their allegations. As discussed above, expert testimony is required. Plaintiffs failed to provide specific causation opinions regarding Ms. Hujik's infertility, Mr. Komatsu's thyroid disorder, Ms. Saperstein's conditions, or Ms. Stone's ovarian/uterine issues. Plaintiffs also failed to offer general causation opinions on these conditions. Accordingly, these allegations fail because Plaintiffs cannot create a genuine issue of material fact. Fed. R. Civ. P. 56(a).

II.     **Plaintiffs cannot reliably establish that they were exposed to relevant levels of chemicals from SLRC.**

A.     **Plaintiffs' sole fate and transport expert, Dr. Ranajit Sahu, did not offer a reliable opinion and should be excluded.**

As discussed in Lockheed Martin's contemporaneously filed *Daubert* motion (Doc. 316), Dr. Sahu fails to offer reliable exposure opinions. He based his opinions on faulty assumptions, including relying on chemical usage data for air emissions, and he lacked data from the alleged site of exposure, the Golf Channel building. (*Id.* at 7–12.) Dr. Sahu also failed to use a reliable methodology to form his opinions. In his opinion proffered in *Grayson v. Lockheed Martin Corp.*, which he adopted in his current report, he identified the steps needed to reconstruct facility and process emissions. (Doc. 273-21 at 79–80.) But he failed to complete the very steps he identified as necessary. (Doc. 316 at 13–14.) He also used EPA AirToxScreen data from distant counties to establish background. (*Id.* at 15–16.) EPA expressly states that AirToxScreen cannot be used for individualized exposures. (*Id.* at 15.) By using a flawed methodology, Dr. Sahu guaranteed his opinions would be unreliable.

Nor did Dr. Sahu take any action to validate his model. (*Id.* at 17–20.) He also failed to conduct an indoor air assessment of the Golf Channel building or any assessment of Mr. Berry's alleged exposure location. (*Id.* at 20–22.) He also failed to examine alternative sources. (*Id.* at 22–24.)

Dr. Sahu offered an unreliable opinion. No Plaintiff has any other evidence of substance concentrations present at their alleged site of exposure. Thus, without this opinion, no Plaintiffs can establish causation, and summary judgment is warranted.

**B.    Even if Dr. Sahu's opinion were reliable, Plaintiffs still do not have an exposure assessment and accordingly cannot create a genuine issue of material fact relating to his exposure.**

"[T]o carry the burden in a toxic tort case, 'a plaintiff must demonstrate the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure to the defendant's toxic substance before he or she may recover . . . ." *McClain*, 401 F.3d at 1241 (quoting *Mitchell v. Gencorp*, 165 F.3d 778, 781 (10th Cir. 1999)). Plaintiffs lack any sampling or monitoring data to place substances from SLRC at their place of employment. Instead, they have chosen to rely on Dr. Sahu's faulty modeling.

Even if those modeled concentrations were reliable, Plaintiffs would still need to conduct an exposure assessment to determine how they could have "come into contact with ([were] exposed to) chemicals that may be present in" air "and of the amounts of those chemicals that enter[ed] the body as a result of these contacts." REFERENCE MANUAL ON SCIENTIFIC EVIDENCE, 507 (Fed. Judicial Ctr., 3d. ed. 2011). "The goal of exposure science is to quantify those amounts and time periods. The quantitative expression of those amounts is referred to as dose." *Id.*

Plaintiffs lack this exposure assessment because none of their experts performed it. Dr. Sahu testified, "Yes. I did not do an exposure assessment. I just did the concentration estimates, correct." (Doc. 291-1 at 184:12–186:13.) Indeed, he knew virtually nothing about the Golf Channel building. (Doc. 291-1 at 170:19–183:3.) And

he did not ask Dr. Gray, his air modeler, to use any accepted EPA models for indoor air assessment.[4] (Doc. 291-1 at 183:5–19.)

None of the health science experts analyzed Sahu's predicted outdoor air concentrations either. They simply accepted his comparison of those predicted concentrations to EPA AirToxScreen from distant counties as evidence of elevated exposures. Plaintiffs thus have no evidence of exposure because no expert performed this work, warranting summary judgment in favor of Lockheed Martin.

## III. Plaintiffs' health-sciences experts' opinions are too unreliable and speculative to establish specific causation.

### A. Plaintiffs failed to proffer reliable expert testimony on specific causation.

Specific-causation proof "requires expert testimony." *McClain*, 401 F.3d at 1237. But as discussed more fully in LMC's Motions to Exclude Drs. Panigrahy (Doc. 310), Schmidt (Doc. 311), Kantor (Doc. 309), and Warburton (Doc. 312), none of Plaintiffs' health science experts offered a reliable specific causation opinion. All shared the same core methodological failures.

First, they did not, for any Plaintiff, reliably establish exposure to the substance of concern or provide any scientific estimate of the Plaintiff's dose. "Dose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect." *Pinares v. Raytheon Techs. Corp.*, No. 19-14831, 2023 WL 2661521, at *3 (11th Cir. Mar. 28, 2023) (quoting *McClain*, 401 F.3d at 1242).

---

[4]    These are the (1) Simulation Tool Kit for Indoor Air Quality and Inhalation Exposure (IAQX) 1.0; (2) Simulation Program i-SVOC 1.0 ; or (3) Program PARAMS 1.0.

Second, they did not "lay a 'reliable groundwork for determining the dose response relationship.'" *Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1248 (11th Cir. 2018) (citation omitted). In other words, they did not provide a reliable estimate of *how much*—if at all—an exposure at the plaintiff's dose would increase the risk of developing the plaintiff's disease. *See, e.g.*, *Pinares*, 2023 WL 2661521, at *5 (affirming exclusion of dose-response opinions from an expert who "provided no reliable baseline against which the district court could evaluate his conclusions as to [plaintiff's] estimated exposure").

Third, they did not make any risk-to-risk comparisons between the disease-specific risk posed by any Plaintiff's exposure and the risks posed by all other potential causes of the disease, "whether known or unknown." *See, e.g.*, *McClain*, 401 F.3d at 1243 ("[T]he likelihood that the chemical caused the disease or illness in an individual should be considered in the context of other known causes." (citation omitted)); *Chapman*, 766 F.3d at 1308 (affirming exclusion of causation experts who could not establish the idiopathic incidence of the plaintiff's disease). Refining these risk comparisons through differential etiology requires establishing the "relative contribution" or "relative risk" of the Plaintiff's risk factors, *see Guinn*, 602 F.3d at 1256–57, and the exclusion of known risk factors must be based on "scientific methods and procedures," *Chapman*, 766 F.3d at 1310. The expert's "subjective beliefs or unsupported speculation" will not suffice. *Id.* Plaintiffs' specific-causation experts uniformly fell short of these standards, failing to establish either doses to which Plaintiffs were allegedly exposed or amounts of risk accompanying such doses.

Plaintiffs David Berry, Morgan Innes, Brian Kemp, Naoyuki Komatsu (his non-derivative claim), Kirsten Sheen, and Wendy Stone all rely on Drs. Panigrahy and Schmidt.[5] If they are excluded, those Plaintiffs' claims fail for lack of causation. Plaintiffs Donna DeMilt, Kristi Hujik, Michael McGarry, Eric Rutledge, and Eric Saperstein (his non-derivative claim) all rely on Dr. Kantor. If his opinion is excluded, their claims fail for lack of causation. Plaintiffs Ryo Komatsu and Ari Saperstein both rely on Dr. Warburton. If his opinion is excluded, their claims fail for lack of causation.

### B. Plaintiffs' experts' opinions are insufficient to enable a reasonable juror to reach causation conclusions that are non-speculative.

Alternatively, the Court should grant summary judgment for Lockheed Martin because Plaintiffs have failed to "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of [Lockheed Martin] was a substantial factor" in the development of Plaintiffs' diseases. *See Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1256 (11th Cir. 2010) (citations omitted). As was the case in *Guinn*, this analysis overlaps with arguments made in Lockheed Martin's specific-causation *Daubert* motions because the same methodological failures that rendered Plaintiffs' experts' opinions unreliable also ensured that no reasonable juror could reach causation conclusions that are non-speculative. *See id.* (holding that a "mere possibility of such causation is not enough," and summary judgment is

---

[5] To the extent Dr. Schmidt relies on Dr. Panigrahy for a causation analysis, her opinion fails if his is excluded.

required "when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced" (citation omitted)).

As detailed in the *Daubert* motions, causation in toxic-tort cases like this one can only be proved inferentially. Plaintiffs have no direct evidence of exposure (e.g., no personal monitoring data), their "diseases do not wear labels documenting their causation" (i.e., there are no substance-specific biological markers of causation), REFERENCE MANUAL AT 635, and certain background risks of their diseases cannot be ruled out (e.g., idiopathic causes). Consequently, meeting their burden of production requires scientific evidence from which a reasonable jury could **infer** that Lockheed Martin exposed Plaintiffs to substances that "increased [their] risk of harm to a greater extent than the risk posed by all other potential causes." *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 28 cmt. b.

In a valid toxic-tort case (unlike here), air-modeling might enable an inference that the plaintiffs were exposed to particular substances at particular doses. Comparisons to epidemiological or toxicological studies might then enable an inference that those doses increase the risk of developing a particular disease by a particular amount. Comparing that increased risk to background risks might then enable an inference that the modeled exposure probably caused the plaintiffs' disease. Each step of this process requires **deduction**—not **speculation**.

Here though, Plaintiffs and their experts have established no reliable link in the causal chain. Errors and invalid assumptions in Dr. Sahu's air model ensure that the resulting concentrations are inaccurate. More obviously, Drs. Panigrahy, Schmidt,

Kantor, and Warburton all admitted that they did not even try to compare Dr. Sahu's

modeled concentrations to concentrations in epidemiological or toxicological studies,

never attempted to perform Plaintiff-specific dose-response assessments (or any dose-

response assessments), and consequently were completely unable to estimate **how**

**much** they believe Plaintiffs' risk of developing their diseases increased as a result of

their alleged exposures. To provide some examples:

- **Dr. Panigrahy**: Q.  Is there anywhere in your expert report for any particular plaintiff where you attempted to take the concentrations expressed in [Dr. Sahu's report] and the durations of their work and ultimately perform a dose–response assessment to evaluate how much increased risk would accompany inhalation of those concentrations for those durations?  [A.] As I mentioned, I did not do that because it wouldn't be appropriate to do.  (Doc. 280–1 at 124:10–20.)

- **Dr. Schmidt**: Q.  For any of the substances modeled by Dr. Sahu, either individually or in any mixture, did you attempt to use any scientific methodology to determine whether or to what extent a change in the amount, intensity, or duration of exposure would be associated with a change in the risk of any type of cancer?  [A.]  No. (Doc. 281-1 at 54:11–19); Q.  And you haven't performed some sort of the quantitative comparison between risks posed by doses of substances modeled by Dr. Sahu and the likelihood of developing any relevant cancer for any other rate—any other reason, right?  [A.]  Yeah, correct.  (*Id.* at 73:4–75:6.)

- **Dr. Kantor**: Q. Do you have a scientific estimate of the dose of PCE a person would have to inhale to cause or substantially contribute to MS? A. No.  Q. The same question for TCE. A. No. Q. The same question for styrene. A. No. Q. The same question for any mixture of PCE, TCE, and styrene. A. No. Q. The same question for Parkinson's disease. A.  No. (Doc. 279-1 at 44:11–24); Q. . . . You have not attempted to determine the relative risk posed by these plaintiffs' risk factors alone or in any combination, right? A.  Correct.  (*Id.* at 152:13–19).

- **Dr**. **Warburton**: Q.  Did you make any effort to compare exposure concentrations modeled by Dr. Sahu to levels in any study of any kind? A.  I don't believe so.  (Doc. 282-1 at 63:14–64:1); Q.  Have you made any effort to quantitatively compare the likelihood that Ryo Komatsu's

22q11.2 deletion occurred as a result of paternal exposure to PCE, TCE, or styrene, as compared to the likelihood that it occurred as a result of any other reason?  [A.]  I'm not quite sure what calculation you would do to do that, but I have not done such calculation.  (*Id.* at 74:1–9.)

With no scientific basis for establishing how much risk, if any, accompanies the exposures Plaintiffs allegedly experienced, there is no basis for comparing that excess risk to idiopathic or other background risks of these disease experienced by the general population—including Plaintiffs. And without those bases for comparison, no juror could find for the Plaintiffs without engaging in prohibited speculation. *See, e.g.*, *Guinn*, 602 F.3d at 1257 (holding that an expert's inability "to determine the relative risk of each [risk] factor" both rendered the expert's testimony unreliable **and** independently failed to create a genuine issue of material fact). Regardless of their reliability, Plaintiffs' experts' specific-causation opinions have failed to create a genuine issue of material fact on specific-causation.  The Court should thus grant summary judgment in favor of Lockheed Martin.

## IV.   If this Court awards summary judgment to Lockheed Martin on the substantive claims, Plaintiffs' derivative claims fail as a matter of law.

A ruling on the lack of general causation, exposure, specific causation, or any combination of the three is dispositive of the loss of consortium claims as well. "While a spouse's loss of consortium claim is a separate and distinct cause of action against a defendant, it is also a derivative cause of action which cannot exist without a primary cause of action by the injured spouse against the same defendant." *Horst v. Parker*, No. 607-CV-612-ORL-19KRS, 2007 WL 4234616, at *3 (M.D. Fla. Nov. 29, 2007) (citing *Gates v. Foley*, 247 So. 2d 40, 45 (Fla. 1971)). Accordingly, "[a]n adverse judgment on

the primary claim bars recovery on the derivative claim." *Dunkel v. Hamilton*, No. 3:15-CV-949-J-34PDB, 2016 WL 4844662, at *9 (M.D. Fla. Aug. 8, 2016), report and recommendation adopted, No. 3:15-CV-949-J-34PDB, 2016 WL 4765740 (M.D. Fla. Sept. 13, 2016) (citing *Albritton v. State Farm Mut. Ins. Co.*, 382 So. 2d 1267, 1268 (Fla. Dist. Ct. App. 1980)); *see also Stone v. United States,* 373 F.3d 1129, 1132 (11th Cir. 2004) ("Because the United States could not be found negligent as to Tiffany Stone, the district court did not err by holding that her parents' derivative loss of consortium claims likewise failed as a matter of law.").

## V.    All claims of fifteen Plaintiffs are barred by the statute of limitations.

Civil actions in Florida are barred "unless begun within the time prescribed" in Florida's statutes of limitation. § 95.011, Fla. Stat. (2022). At the time the Fourth Amended Complaint ("FAC") was filed, the operative statutes of limitation for each of Plaintiffs' claims was four years. *See* §§ 95.11(3)(f) ("[a]n action founded on statutory liability")[6]; 95.11(3)(a) ("[a]n action founded on negligence"); 95.11(3)(p) ("[a]ny action not specifically provided for in these statutes").[7]

Generally, "the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues." § 95.031, Fla. Stat. "A

---

[6] *See Clark v. Ashland, Inc.*, No. 2:13-CV-794-FTM-2, 2015 WL 1470657, at *4 (M.D. Fla. Mar. 31, 2015) ("Florida law provides that an action founded on statutory liability must be brought within four years from the time the last element constituting a cause of action accrues."); *California Fin., LLC v. Perdido Land Dev. Co.*, 303 F. Supp. 3d 1306, 1310-11 (M.D. Fla. 2017) (analyzing the timelines of a Chapter 376 claim under Florida Statute § 95.11(3)(f)).

[7] *See Anderson v. Epstein*, 202 So.3d 893, 899 n.2 (Fla. 3d DCA 2016) (noting that the plaintiff's claims for nuisance and negligence were subject to a four-year statute of limitations).

cause of action accrues when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. As to each of Plaintiffs' claims for strict liability, public nuisance, and negligence, damages is the last element. *See West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 87 (Fla. 1976) (identifying the last element for common law strict liability as damages); *Aramark Unif. & Career Apparel, Inc. v. Easton*, 894 So. 2d 20, 24 (Fla. 2004) (explaining that the main difference in the elements of a traditional strict liability claim and a claim under section 376.313 is that, in the latter, the plaintiff need not prove causation—thus, the last element is also damages); *Nitram Chemicals, Inc. v. Parker*, 200 So. 2d 220, 225 (Fla. 2d DCA 1967) (identifying the last element of a common law nuisance claim as damages); *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (identifying the last element of a common law negligence claim as damages).

The "longstanding rule" for personal injury claims is that "the cause of action accrues and the statute begins to run from the time when the injury was first inflicted, and not from the time when the full extent of the damages sustained have been ascertained." *Larson & Larson, P.A. v. TSE Indus., Inc.*, 22 So. 3d 36, 42 (Fla. 2009). In other words, the fact that the most substantial damages did not occur until a later date does not postpone the running of the statute of limitations. *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1519 (11th Cir. 1996).

According to Plaintiffs, Donna DeMilt was diagnosed with multiple sclerosis ("MS") in 2013, Brian Kemp was diagnosed with hairy cell leukemia in 2010, Naoyuki Komatsu was diagnosed with a thyroid disorder and leukemia in 2015, Ryo Komatsu

was born with DiGeorge syndrome in 2006, Michael McGarry was diagnosed with Parkinson's in 2017, Ana Saperstein experienced an abnormal pregnancy and gave premature birth to Ari Saperstein, who had genetic birth defects, in 2012, Ari Saperstein was born with genetic birth defects in 2012, Kirsten Sheen was diagnosed with breast cancer in 2008, Wendy Stone was diagnosed with breast cancer in 2008, and Eric Rutledge was diagnosed with MS in 2014.[8] Although Plaintiffs' causes of action actually accrued at the first onset of their health conditions, the diagnosis of disease is an objective indication of the last possible date of the accrual of the alleged injuries. *See Pinares v. Raytheon Techs. Corp.*, 2023 WL 2868098, at *6 n.6 (S.D. Fla. Apr. 10, 2023) (noting that the accrual date would have been when plaintiffs first contracted the disease, but considering the date of diagnosis as the "date by which [p]laintiffs were aware of the injury and the latest date from which the limitations period began to run").[9]

Plaintiffs filed the initial complaint in this case on April 19, 2021 and LMC removed it to this Court on August 19, 2021. (Doc. 1). An earlier action initiated on

---

[8] All dates of diagnosis come from responses to Plaintiff Fact Sheets. Plaintiffs have marked these documents confidential. LMC will either corroborate those dates in a joint stipulation of material facts to be filed on or before the summary judgment response deadline per the CMSO (Doc. 81 at 14) or move for leave to file under seal or with other appropriate confidentiality designations if Plaintiffs will not stipulate.

[9] Florida's "delayed discovery doctrine" and "manifest discovery doctrine" do not apply to delay the accrual date of Plaintiff's strict liability, nuisance, negligence, and loss of consortium claims. *See Davis v. Monahan*, 832 So. 2d 708, 710 (Fla. 2002) ("Aside from . . . fraud, products liability, professional and medical malpractice, and intentional torts based on abuse, there is no other statutory basis for the delayed discovery rule."); *R.R. v. New Life Cmty. Church of CMA, Inc.*, 303 So.3d 916, 921-23 (Fla. 2020) (noting the same); *Pinares,* 2023 WL 2868098, at *7-*8 (finding manifest discovery doctrine applies only in product liability cases and rejecting its application in toxic exposure cases).

September 28, 2020, *San Martin, et al. v. Lockheed Martin Corp.*, No. 6:20-cv-01769-RBD-GJK (M.D. Fla. 2020), which has since been dismissed,[10] raised claims arising from the same alleged conduct by, among others, Eric Rutledge, Ana Saperstein, Ari Saperstein, Kirsten Sheen, and Wendy Stone. To assess compliance with the statute of limitations, the claims for those Plaintiffs relate back to the date that original complaint was filed in 2020. *See Anderson v. Epstein*, 202 So. 3d 893, 899 (Fla. 3d DCA 2016). Even so, the four-year statute of limitations for each of these Plaintiffs' causes of action had expired well before they first raised their claims. Consequently, the strict liability, public nuisance, and negligence claims raised by Plaintiffs Donna DeMilt, Brian Kemp, Naoyuki Komatsu, Ryo Komatsu, Michael McGarry, Ana Saperstein, Ari Saperstein, Kirsten Sheen, Wendy Stone, and Eric Rutledge—filed beyond the expiration of the statutes of limitation—are barred and summary judgment must be granted.

As to Ana Saperstein's medical monitoring claims (Count VII), that claim too has a four-year statute of limitations. § 95.11(3)(p), Fla. Stat. ("[a]ny action not specifically provided for in these statutes"). LMC has not located instructive Florida case law on the date of accrual for medical monitoring claims. The Third Circuit determined that a "medical monitoring cause of action accrues when [a plaintiff] has been placed at a 'significantly increased risk of contracting a serious latent disease.'" *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 152 (3d Cir. 1998) (quoting *Redland Soccer Club*

---

[10] The Complaint in *San Martin, et al. v. Lockheed Martin Corp.*, No. 6:20-cv-01769-RBD-GJK (M.D. Fla. 2020) was voluntarily dismissed on April 22, 2021. (Doc. 59.)

*v. Department of the Army*, 696 A.2d 137, 145 (1997). Ana Saperstein's alleged injury manifested in 2012 with an abnormal pregnancy and delivery of a child with genetic abnormalities, which she claims was caused by her husband Eric Saperstein's alleged exposure at the Golf Channel between 1994 and 2008. In other words, based on Ms. Saperstein's allegations, she first experienced a significantly increased risk of contracting a serious latent disease—at the latest—in 2012. By the time this allegedly increased risk manifested, Eric Saperstein had not been exposed to any conditions at the Golf Channel for at least four years. Having first raised her medical monitoring claim in 2020—eight years after the manifestation of her alleged injury and four years after her husband's last exposure to the allegedly toxic conditions—Ms. Saperstein's claim is also well past the expiration of the statute of limitations and is therefore barred.

The loss of consortium claims of Tom Stone (for Wendy Stone), Kelly Kemp (for Brian Kemp), Naho Komatsu (for Naoyuki and Ryo Komatsu), Eric Saperstein (for Ana and Ari Saperstein), and Ann McGarry (for Michael McGarry), also are barred by a four-year statute of limitations. § 95.11(3)(p), Fla. Stat. ("[a]ny action not specifically provided for in these statutes"). A common law loss of consortium claim is derivative of a personal injury claim and accrues in the same manner as a personal injury claim: the time when the injury was first inflicted rather than when the full extent of the damages has been sustained. *Elkins v. R.J. Reynolds Tobacco Co.*, 65 F. Supp. 3d 1333, 1337 (M.D. Fla. 2014). Accordingly, Plaintiffs' loss of consortium claims also are time-barred and must be dismissed.

## CONCLUSION

For the reasons expressed above, the Court should grant summary judgment in favor of Lockheed Martin on all claims asserted by the Bellwether Group I Plaintiffs.

Dated: June 20, 2023

Francis A. Citera*
citeraf@gtlaw.com
Gretchen N. Miller*
millerg@gtlaw.com
**GREENBERG TRAURIG, LLP**
77 West Wacker Dr., Ste. 3100
Chicago, Illinois 60601
Telephone: (312) 456-6583
Facsimile: (312) 899-0320

Irina Khasin*
irina.khasin@gtlaw.com
**GREENBERG TRAURIG, LLP**
Terminus 200
3333 Piedmont Rd. NE, Ste. 2500
Atlanta, GA 30305
Telephone: (678) 553-2455

Respectfully submitted,

/s/   David Weinstein
David B. Weinstein (FBN 604410)
weinsteind@gtlaw.com
Christopher Torres (FBN 0716731)
torresch@gtlaw.com
Ryan T. Hopper (FBN 0107347)
hopperr@gtlaw.com
Raymond Jackson (FBN 1028350)
jacksonra@gtlaw.com
Brian Porter (FBN 0120282)
porterb@gtlaw.com
Christopher R. White (FBN 1022219)
whitech@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Blvd., Ste. 1900
Tampa, Florida 33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900

*Specially admitted*

*Attorneys for Defendant Lockheed Martin Corporation*

## CERTIFICATE OF SERVICE

I certify that on June 20, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/   David Weinstein
Counsel for Lockheed Martin Corporation