UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

VERVICIA HENDERSON *et al.*,

    Plaintiffs,

v.                                                     Case No. 6:21-cv-1363-RBD-DCI

LOCKHEED MARTIN
CORPORATION; and UNIVERSAL
CITY PROPERTY MANAGEMENT
COMPANY III, LLC,

    Defendants.
_____

## ORDER

Before the Court are the parties' summary judgment and *Daubert* motions.

## BACKGROUND

In this toxic tort case that is part of a suite of companion cases, more than sixty Plaintiffs allege that Defendant Lockheed Martin Corporation's weapons manufacturing facility in Orlando gave off toxic chemicals that contaminated the surrounding air, soil, and groundwater, which caused Plaintiffs to suffer various injuries. (Doc. 89.)

In support of their resulting strict liability, negligence, nuisance, and other claims, Plaintiffs have marshalled various doctors to opine on general causation—that is, whether each chemical at issue is able to cause the types of injuries at issue.

Plaintiffs and Lockheed[1] have filed cross-motions for summary judgment on the issue of general causation. (Docs. 142, 152; *see* Docs. 164, 165, 177, 178.) And both sides have moved to exclude each other's general causation experts. (Docs. 139–41, 144, 146, 148, 151; *see* Docs. 157, 160, 163, 167, 169, 171, 173.) The Court also held a hearing on general causation. (Doc. 209.)

Plaintiffs later submitted medical opinions on specific causation—that is, whether the chemicals actually caused their specific injuries. Lockheed has moved for summary judgment on the issue of specific causation. (Doc. 318; *see* Docs. 339, 356.) And both sides have moved to exclude each other's specific causation experts. (Docs. 283, 287, 289, 292, 294, 296, 299, 301, 304, 305, 307, 309–12, 314, 316, 317; *see* Docs. 332, 334, 336, 338, 341–50.)

The Court then entered an interim causation Order in which it decided: (1) that this is a *McClain* category two case requiring a full *Daubert* analysis; and (2) to take general and specific causation up on the full scientific record.[2] (Doc. 370.) Supplemental briefing followed that Order. (Docs. 373, 374.) These matters are ripe.

The instant Order focuses on Plaintiffs' general causation expert Dr. Dipak

---

[1] Plaintiffs allege that the second Defendant, Universal City Property Management Company III, bought some land from Lockheed and contributed to some of the contamination. (Doc. 89, ¶ 17; *see* Doc. 286-3.) Universal did not move for summary judgment.

[2] The Court incorporates that Order in full here.

Panigrahy, a pathologist. (Doc. 139; *see* Doc. 173.)

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmovant. *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 759 (11th Cir. 2006). Then the court must decide whether there is "sufficient disagreement to require submission to a jury." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (cleaned up).

Expert testimony may be admitted only if: (1) the expert is qualified; (2) the methodology is reliable; and (3) the testimony is helpful. *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The proponent of the expert must establish the opinion is admissible, *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010), but need not prove it is correct, *Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1279 (M.D. Fla. 2002).

## ANALYSIS

With *McClain* categorization decided, the Court turns to analyzing whether there are any genuine issues of material fact precluding summary judgment on

causation. Given the number of causation experts at issue, the Court is taking them one at a time; Dr. Panigrahy is Plaintiffs' only remaining general causation expert the Court has not yet considered.

Dr. Panigrahy reviewed epidemiological literature and conducted a Bradford Hill[3] analysis to conclude that seven[4] substances are able to cause eight[5] types of cancer affecting twenty-two Plaintiffs. (Doc. 136-1; Doc. 136-3, pp. 38:21–39:3.) He also reviewed public health agency findings, animal studies, and biologically plausible mechanisms of action, which are all secondary to his

---

[3] As the Court explained in the interim causation Order (Doc. 370, p. 13), experts relying on epidemiological studies to show general causation must identify: (1) first, an association between a particular substance and a particular disease; and (2) second, whether that association shows a cause-effect relationship. *Deepwater Horizon*, 2020 WL 6689212, at *10. This second step typically involves considering the Bradford Hill factors: "(1) temporal relationship; (2) strength of the association; (3) dose-response relationship; (4) replication of the findings; (5) biological plausibility; (6) consideration of alternative explanations; (7) cessation of exposure; (8) specificity of the association; and (9) consistency with other knowledge." *Id.*

[4] These seven substances are: trichloroethylene (TCE), tetrachloroethylene/perchloroethylene (PCE), formaldehyde (HCHO), arsenic (As), hexavalent chromium (Cr6), 1,1,1-trichloroethane (1,1,1-TCA), and styrene. (Doc. 136-1, pp. 357–445.)

[5] These cancers are: (1) kidney (Andrew Ebert and Helen Tosti); (2) breast (Patricia Anderson, Christine Eidemiller, Marie Outing, Renee Ross, Wendy Stone, and Kristen Sheen); (3) thyroid (Victor Goldschmidt and Brendan Havens); (4) pancreatic (Meredith Brunelle); (5) liver and bile duct (Andrew Ebert and Craig Henderson); (6) testicular (David Berry, Adam Brackett, Donald Goertz, Kevin Kiely, and Jeffrey Muddell); and (7) anal cancer (Patricia Ramsey); plus (8) Hodgkin's lymphoma (Morgan Innes), non-Hodgkin's lymphoma (Logan Goodson), and leukemia (Brian Kemp and Naoyuki Komatsu), grouped as blood cancer. (Doc. 136-1, pp. 363–445; Doc. 152-3; Doc. 211-2.)

Dr. Panigrahy also opined on brain (glioblastoma specifically) and lung cancer, which are not at issue in this case. (Doc. 136-1, pp. 420–32, 445–51; *see* Doc. 152-3.) (Plaintiff Harrison Carp-Schursky suffers from a midbrain glioma (not specified as glioblastoma) in addition to birth defects, but he is not relying on Dr. Panigrahy (*see* Doc. 152-3, p. 2), and Plaintiffs' summary chart limits his illnesses to congenital malformations (*see* Doc. 211-2, p. 1), so the Court considers any part of his claims that do not rely on Dr. Mattison (*see* Doc. 394) to be abandoned (*see* Doc. 370, pp. 8–9 & n.4).)

4

epidemiological review.[6] (Doc. 136-1; Doc. 136-3, pp. 40:1–41:1, 48:8–10, 49:9–12; Doc. 370, pp. 10, 14–15); *see Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1308 (11th Cir. 2014); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1248–50 (11th Cir. 2005); *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 299 F. Supp. 3d 1291, 1306–10 (N.D. Fla. 2018). Dr. Panigrahy's over-500-page report is roughly broken in two, with the first half examining each substance's cancer-causing properties as a general matter and the second half performing the Bradford Hill analysis on each type of cancer. (*See generally* Doc. 136-1.)

Lockheed moves to exclude Dr. Panigrahy on the ground that he lacks a reliable methodology,[7] largely because he plagiarized significant portions of his report from the International Agency for Research on Cancer's ("IARC") Monographs publications (and the sources IARC cites). (Doc. 139, pp. 12–25.) The Court agrees. Dr. Panigrahy's report is—put plainly—a mess. (*See* Doc. 136-1.) The

---

[6] Of the three primary methodologies—epidemiology, dose-response, and background risk—Dr. Panigrahy did neither a case-specific dose-response analysis (which the Court does not consider fatal, *see supra* note 3), nor a background risk analysis, so his review of the epidemiological literature is the only primary methodology on which his report relies. (*See* Doc. 136-1; Doc. 136-3, pp. 129:2–9; Doc. 370, pp. 12–15.)

[7] Lockheed also seeks to exclude Dr. Panigrahy's opinions for lack of helpfulness or "fit" due to his lack of consideration of case-relevant exposure conditions and dose-response analysis, relying on *In re Deepwater Horizon Belo Cases*, No. 3:19CV963, 2020 WL 6689212 (N.D. Fla. Nov. 4, 2020), and *Wright v. Willamette Industries, Inc.*, 91 F.3d 1105 (8th Cir. 1996). (Doc. 139, pp. 3–12.) But the Court has already rejected Lockheed's interpretation of those cases in the interim causation Order. (Doc. 370, pp. 17–18 n.9; *id.* at 20–21 n.12.) So the Court's conclusion on Dr. Panigrahy is solely predicated on the reliability of his methodology regardless of the fact that he did not consider dosage issues.

Court simply cannot put this testimony before a jury.

Plagiarism by itself does not necessarily warrant exclusion of an expert *per se*, as it typically bears on credibility rather than reliability. *See, e.g.*, *ADT LLC v. Safe Home Sec. Inc.*, No. 20-23918-CIV, 2022 WL 3702839, at *2 (S.D. Fla. June 21, 2022); *Legier & Materne v. Great Plains Software, Inc.*, No. CIV.A. 03-0278, 2005 WL 2037346, at *4 (E.D. La. Aug. 3, 2005); *cf. Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005) ("[A] district court cannot exclude an expert because it believes the expert lacks personal credibility."). But when the plagiarism is so blatant that it represents deliberate lack of candor, it may cause the report to be unreliable enough to justify exclusion. *See Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, No. 6:15-cv-641, 2017 WL 11457208, at *2 (M.D. Fla. Apr. 13, 2017) (Antoon, J.); *see also Moore v. BASF Corp.*, No. CIV.A. 11-1001, 2012 WL 6002831, at *7 (E.D. La. Nov. 30, 2012), *aff'd*, 547 F. App'x 513 (5th Cir. 2013).

Here, there is no question that Dr. Panigrahy extensively plagiarized his report. (*See generally* Doc. 136-4 (color-coding hundreds of pages of report lifted directly from IARC's Monographs and its sources).) A side-by-side comparison speaks for itself. (*Compare, e.g.*, Doc. 136-6, *with* Doc. 136-7.) And his deposition made the plagiarism appear deliberate, as he repeatedly outright refused to acknowledge the long swaths of his report that quote other work verbatim without any quotation marks at all—instead stubbornly insisting that he cited over

6

1,100 references, as if that resolves the attribution issue (it does not).[8] (*See, e.g.*, Doc. 136-3, pp. 265:18–272:9 & *passim*.) This is far beyond the type of case in which a jury is fit to decide whether an expert's isolated sloppy citation practices undermine his conclusions. *Cf. Legier*, 2005 WL 2037346, at *4. This is pervasive passing off others' work as his own, demonstrating an unreliable methodology as a whole. *See Spiral Direct*, 2017 WL 11457208, at *2 ("Due to Kasper's attempt to appropriate the opinions of Nelson and play them off as her own, Kasper's report is unreliable and must be excluded."). Indeed, the plagiarism is so ubiquitous throughout the report that it is frankly overwhelming to try to make heads or tails of just what is Dr. Panigrahy's own work—a task that neither he nor Plaintiffs' counsel even attempts to tackle. (*See* Doc. 136-3, pp. 265:18–272:9 (failing to point to a single sentence in an entire section of his report that is his original work); Doc. 173, pp. 13–14.) If neither Dr. Panigrahy nor Plaintiffs' counsel nor the Court can parse out exactly what is his own analysis based on his own expertise, the Court cannot expect the jury to do so. *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The district court's [gatekeeping] role is especially significant since the expert's opinion can be both powerful and quite misleading

---

[8] The volume of references actually makes the problems with Dr. Panigrahy's methodology more glaring, as he admitted that he did not even read the 1,100 papers in their entirety. (Doc. 136-3, pp. 35:24–37:6.)

because of the difficulty in evaluating it." (cleaned up)). Because the report indicates a lack of intellectual rigor that one would expect from *any* expert, the plagiarism in itself is sufficient reason for exclusion here. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("The objective of [*Daubert*'s gatekeeping] requirement is to . . . make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.").

But the plagiarism here reflects even deeper methodological problems because the report lifts a great deal of its analysis from IARC in particular. (*See, e.g.*, Doc. 136-7.) As the Court discussed in the interim causation Order, research agencies like IARC are, understandably, focused on protecting public health and recommending protective standards, rather than evaluating causation from an expert standpoint in the litigation context. (*See* Doc. 370, pp. 10–11); *McClain*, 401 F.3d at 1249 (explaining that agencies assessing risk for purpose of public health are evaluating evidence from a different vantage point than causation under *Daubert*); *Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1247 (11th Cir. 2018) (explaining the "methodological perils" of relying exclusively on regulatory agencies' standards to establish causation because they are protective rather than predictive); *cf. Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 198 (5th Cir. 1996) ("The agencies' [including IARC's] threshold of proof is reasonably lower than that

appropriate in tort law, which traditionally makes more particularized inquiries into cause and effect and requires a plaintiff to prove that it is more likely than not that another individual has caused him or her harm." (cleaned up)); *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1109 (N.D. Cal. 2018), *aff'd*, 997 F.3d 941 (9th Cir. 2021) ("IARC classification is insufficient to get the plaintiffs over the general causation hurdle."). IARC determines qualitatively whether substances are carcinogenic to humans; its descriptors have "no quantitative significance" such as more likely than not. (*See* Doc. 136-7, pp. 22–23.) Troublingly, Dr. Panigrahy did not grasp this crucial distinction between IARC's classifications and the general causation preponderance standard. (Doc. 136-3, pp. 41:18–19 ("IARC . . . that is a general causation where [they are determining] [c]an a chemical cause cancer?"), 79:12–15 ("So, in your mind, is a general causation analysis the type of analysis that would be performed in, for instance, an IARC monograph?" "That's part of the . . . IARC monograph."), 131:13–20 ("IARC . . . they focus on cancer causation. But other societies . . . [t]hey don't determine if something causes cancer."), 132:15–19 ("What, in your own words, is IARC trying to convey if they determine that a chemical is a probable human carcinogen?" "So that means, more likely than not, that this chemical will cause cancer in humans."), 143:2–6 ("I wanted to compare my analysis to what three independent scientific agencies [including IARC], who also—their goal is also to determine general

9

causation, if a chemical can—is a human carcinogen.").) Because so much of Dr. Panigrahy's report is merely a wholesale adoption of IARC's findings under the guise of his own expertise, and IARC's findings in and of themselves are insufficient, he fails to reliably establish general causation.

Again, the Court could end there. But the report gets worse—because Dr. Panigrahy did not just lift from IARC without alteration. Rather, several times, he copied lengthy paragraphs from IARC verbatim but conveniently left out sentences in which IARC urged caution about the limitations of its findings, misleadingly presenting the science as more definitive than it actually is. (*Compare* Doc. 136-7, p. 27 (beginning, "In studies in humans," and ending, "to quantitative assessments"), *with* Doc. 136-1, pp. 239–40 (copying IARC but excluding "confounding could not be entirely excluded" and "[n]o consistent pattern of elevated risk was observed"); *compare* Doc. 136-7, pp. 28–29 (beginning, "The NCI cohort," and ending, "lifestyle risk factor"), *with* Doc. 136-1, pp. 243–44 (copying IARC but excluding "[t]here was little evidence of an exposure-response effect").) Copying from IARC is bad enough, but *selectively* copying to overstate the science makes Dr. Panigrahy's methodology even less reliable. *See McClain*, 401 F.3d at 1247 ("The authors of the articles limit the application of their studies consistent with the principles of good science; [the expert in question] expands the application beyond good science."); *cf. Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir.

10

2009) ("[C]ausation testimony is inadmissible if an expert relies upon studies or publications, the authors of which were themselves unwilling to conclude that causation had been proven."). And because Dr. Panigrahy did not actually put quotation marks around what he was lifting from IARC, it would be a near-impossible task to try to find every instance in his 500-page report where he went even further than IARC would by omitting its cautionary language, so the Court cannot parse out reliable sections.[9] (*See, e.g.*, Doc. 136-3, p. 189:9–24.)

In sum, the rampant plagiarism in Dr. Panigrahy's report leads the Court to conclude that his general causation methodology as a whole is too unreliable to put before a jury.[10] *See generally McClain*, 401 F.3d at 1255. So Lockheed's motion to exclude Dr. Panigrahy (Doc. 139) is due to be granted in full. With Dr. Panigrahy excluded, there is no reliable general causation testimony on any of the types of cancer at issue,[11] so summary judgment is due to be granted in favor of Lockheed on the exposure claims of Plaintiffs Patricia Anderson, David Berry, Adam Brackett, Meredith Brunelle, Andrew Ebert, Christine Eidemiller,

---

[9] Because the second Bradford Hill half of Dr. Panigrahy's report relies on the plagiarized first half, which examines the substances' cancer causation in general, it too is fatally flawed. (*See* Doc. 136-3, pp. 43:22–44:17.)

[10] Dr. Panigrahy's rebuttal general causation report and specific causation report do not change the Court's analysis. (*See* Docs. 136-2, 275-2.)

[11] With the exclusion of Dr. Panigrahy's opinion, there is no general causation testimony on 1,1,1-TCA, hexavalent chromium, or arsenic, so the only remaining substances at issue are PCE, TCE, toluene, xylenes, formaldehyde, and styrene. (*See* Doc. 370, pp. 5–6 & n.2; Doc. 394, p. 4 n.4.)

11

Donald Goertz, Victor Goldschmidt, Logan Goodson, Brendan Havens, Craig Henderson, Morgan Innes, Brian Kemp, Kevin Kiely, Naoyuki Komatsu, Jeffrey Muddell, Marie Outing, Patricia Ramsey, Renee Ross, Kristen Sheen, Wendy Stone, and Helen Tosti.[12] *See Chapman*, 766 F.3d at 1316; *Hendrix*, 609 F.3d at 1203.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1. Lockheed's motion to exclude Dr. Panigrahy (Doc. 139) is **GRANTED**.

2. Lockheed's motion for summary judgment on general causation (Doc. 152) is **GRANTED IN PART** as set forth above. This Order resolves the entirety of that motion. The remaining motions will be taken up in forthcoming Orders.

3. In its discretion given the number of parties involved, the Court will enter piecemeal judgments as to particular Plaintiffs once their claims are resolved in full. *See* Fed. R. Civ. P. 54(b). So the Clerk is

---

[12] This also resolves the consortium and wrongful death claims of: Arthur Anderson, Elizabeth Brackett, Justin Brunelle, Richard Eidemiller, Katherine Flury, Elaine Goldschmidt, Vervicia Henderson (her medical monitoring claim will be taken up separately), Andrew Innes, Kelly Kemp, Stephanie Muddell, Deborah Reese (her medical monitoring claim will be taken up separately), John Tosti, and Brenda White. The Court will take up the medical monitoring claims of these Plaintiffs separately: Patricia Anderson, David Berry, Adam Brackett, Vervicia Henderson, and Deborah Reese. (Doc. 152-3.)

**DIRECTED** to enter judgment in favor of both Defendants[13] and against Plaintiffs Arthur Anderson, Elizabeth Brackett, Justin Brunelle, Meredith Brunelle, Andrew Ebert, Christine Eidemiller, Richard Eidemiller, Katherine Flury, Donald Goertz, Elaine Goldschmidt, Victor Goldschmidt, Logan Goodson, Brendan Havens, Craig Henderson, Andrew Innes, Morgan Innes, Brian Kemp, Kelly Kemp, Kevin Kiely, Naoyuki Komatsu, Jeffrey Muddell, Stephanie Muddell, Marie Outing, Patricia Ramsey, Renee Ross, Kristen Sheen, Wendy Stone, Helen Tosti, John Tosti, and Brenda White. The Clerk is further **DIRECTED** to terminate those Plaintiffs as parties to this action.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 18, 2024.



ROY B. DALTON, JR.
United States District Judge

---

[13] Though Universal did not move for summary judgment, it is entitled to judgment on these claims because these particular Plaintiffs cannot prove general causation as a matter of law. *See Williams v. Mosaic Fertilizer, LLC*, No. 8:14-cv-1748, 2017 WL 5307920, at *3 (M.D. Fla. Jan. 12, 2017), *aff'd*, 889 F.3d 1239 (11th Cir. 2018) (noting that summary judgment is properly granted *sua sponte* where the parties fully briefed the merits of the claims and thus the plaintiff had sufficient notice under Rule 56(f)); *cf. Artistic Ent., Inc. v. City of Warner Robins*, 331 F.3d 1196, 1201 (11th Cir. 2003).