UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

VERVICIA HENDERSON *et al.*,

   Plaintiffs,

v.   Case No. 6:21-cv-1363-RBD-DCI

LOCKHEED MARTIN
CORPORATION; and UNIVERSAL
CITY PROPERTY MANAGEMENT
COMPANY III, LLC,

   Defendants.
_____

## ORDER

Before the Court are Plaintiffs' motions to exclude several of Defendant Lockheed Martin Corporation's experts: Michael Ballenger, Kristine Davies, Dr. Rene Salazar, Stephen Emsbo-Mattingly, and Dr. Shahrokh Rouhani (Docs. 301, 304, 305, 307, 314).

### BACKGROUND

This toxic tort case is part of a suite of companion cases where more than sixty Plaintiffs allege that Lockheed's weapons manufacturing facility in Orlando gave off toxic chemicals that contaminated the surrounding air, soil, and groundwater, causing Plaintiffs to suffer various injuries. (Doc. 89.) Given the complexity of the case, the Court has been taking up causation and expert issues

piecemeal (*see* Doc. 370). With the Court's recent Order denying Lockheed's motion to exclude Plaintiffs' fate-and-transport expert, Dr. Sahu (Doc. 451), this crop of Lockheed's rebuttal experts is now ripe for consideration.

## STANDARDS

Expert testimony may be admitted only if: (1) the expert is qualified; (2) the methodology is reliable; and (3) the testimony is helpful. *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The proponent of the expert must establish the opinion is admissible, *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010), but need not prove it is correct, *Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1279 (M.D. Fla. 2002).

## ANALYSIS

First, Ballenger, an air quality engineer, is one of Lockheed's rebuttal experts to Sahu. (Doc. 303-1.) Plaintiffs move to exclude his testimony, arguing essentially that Ballenger merely challenges the reliability of Sahu's testimony rather than using reliable methodology of his own. (Doc. 301.) But Ballenger's opinions are admissible for the same reasons Sahu's are: both sides disagree about the correctness of Sahu's inputs on the air model and the accuracy of the emissions data provided by Lockheed, a classic clash of two qualified expert views the jury will have to weigh and decide. (Doc. 451); *see In re Abilify (Aripiprazole) Prods. Liab.*

*Litig.*, 299 F. Supp. 3d 1291, 1368 (N.D. Fla. 2018) ("[The defense experts'] opinions were, essentially, critiques of Plaintiffs' experts' evidence, methodologies, and conclusions. This was entirely appropriate." (citation omitted)). Because Ballenger's opinions are sufficiently grounded in science to render them reliable and his rebuttal of Sahu will be helpful for the jury to understand the data on both sides, he may testify.

Second, Davies is another air quality engineer rebutting Sahu's and other testimony. (Doc. 313-1.) Plaintiffs move to exclude her testimony largely for the same reasons as Ballenger—and for the same reasons, her rebuttal testimony is largely admissible.[1] (Doc. 304); *see Abilify*, 299 F. Supp. 3d at 1368. That said, Davies' report raises some red flags that can only be addressed fully in context at trial. As an expert, Davies may not testify that facts she was instructed to assume are true—she may only testify that she relied on certain facts as true in forming her conclusions. *See* Fed. R. Evid. 703 (opinion must be based on facts expert was made aware of or personally observed); *Desai v. Farmer*, No. 5:12-cv-495, 2014 WL 5473564, at *5 (M.D. Fla. Oct. 28, 2014) (Howard, J.) (finding that testimony predicated on witness acting as "an investigator and a factfinder" rather than

---

[1] While Davies may rebut other experts, she may not speculate about what other experts meant. (Doc. 313-1, p. 27); *see* Fed. R. Evid. 702 advisory committee's note (testimony must not be speculative).

3

applying expertise to assumed facts was not proper expert opinion). To the extent that certain sections of her report purport to introduce fact testimony (*see* Doc. 313-1, pp. 15–28), she will not be allowed to give improper lay testimony about facts for which she lacks personal knowledge, nor will she be allowed to indiscriminately merge together fact and expert testimony. *See* Fed. R. Evid. 602; *United States v. Hawkins*, 934 F.3d 1251, 1266 (11th Cir. 2019). If Davies did garner personal knowledge of information from Lockheed employees, that information (and the source of the information, including from whom and when it was received) either must have been fully disclosed in her report or must have been provided to Plaintiffs through discovery for her to be permitted to testify to those facts. *See* Fed. R. Evid. 705 & advisory committee's note (expert may be required to disclose facts relied on during cross, and judge may order the facts to be disclosed beforehand); Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii) (expert report must contain a complete statement of the basis for the witness's opinions and the facts considered by the witness); *Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529, 536 (5th Cir. 1974) ("[A]n expert must be in possession of sufficient proved facts to enable him to express a reasonably accurate conclusion, and . . . the facts upon which he bases his opinion must be disclosed to the jury." (cleaned up)); *Norfolk S. Corp. v. Chevron U.S.A., Inc.*, 279 F. Supp. 2d 1250, 1272 (M.D. Fla. 2003) (Corrigan, J.), *rev'd on other grounds*, 371 F.3d 1285 (11th Cir. 2004) (expert's

conclusion must be based on facts in the record). This trial will not devolve into a game of gotcha: the facts are the facts and they must be known to both sides, and the experts can then interpret them as they may. To the extent Plaintiffs are concerned that Davies' opinions lack support or stray beyond the scope of her expertise, they can cross her on those grounds or present contrary evidence. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). But to the extent Davies begins giving improper undisclosed fact testimony, Plaintiffs should contemporaneously object and the Court will be on guard to limit it. The Court will also be on guard to limit cumulative testimony, as Lockheed cannot bolster its rebuttal of Sahu's opinions through multiple duplicative experts. *See* Fed. R. Evid. 403; *Stern v. NCL Bahamas Ltd.*, No. 19-20280-CIV, 2020 WL 6820877, at *6 (S.D. Fla. Sept. 28, 2020). So Davies may testify for now, but Lockheed must be mindful of this guidance.

Third, Dr. Salazar is Lockheed's industrial hygiene expert. (Doc. 306-1.) Plaintiffs move to exclude his testimony because he criticized Plaintiffs' experts for not performing real-time exposure monitoring—which he purportedly later acknowledged to be impossible.[2] (Doc. 305, p. 4.) But this opinion is classic fodder

---

[2] Plaintiffs also seek to exclude Salazar's opinions about Carol Davis, who is not a plaintiff in the instant action, but Lockheed concedes that this part of his opinions do not apply in this case, so this portion of the motion is moot. (Doc. 305, p. 7; Doc. 350, p. 4 n.2.)

for cross-examination. *See Quiet Tech.*, 326 F.3d at 1341. Salazar may properly point out what he perceives to be flaws in Sahu's methodology; beyond that, holes in his own conclusions are material for Plaintiffs' cross. *See Abilify*, 299 F. Supp. 3d at 1368. So he may testify.

Fourth, Emsbo-Mattingly is a chemist specializing in environmental forensics. (Doc. 308-1.) Plaintiffs move to exclude his testimony on several grounds. (Doc. 307.) First, they complain about several issues with sampling data he took from a pilot study, arguing that he did not sample deep enough for subsurface soil and sampled from present day but extrapolated to historical conditions. (*Id.* at 6–14.) But Emsbo-Mattingly sufficiently explained how he was using the current data to analyze historical emissions and why he sampled the way he did. (*See* Doc. 347, pp. 10–14.) The different experts in this case have different methods of trying to get at historical exposure data, and the perceived flaws in each approach are fodder for cross, not exclusion. *See Quiet Tech.*, 326 F.3d at 1341. Plaintiffs' other arguments against Emsbo-Mattingly are similarly unpersuasive—they simply disagree with his presumptions and the premise of his study, but a dispute about the correctness of his conclusions does not make his methodology unreliable. (Doc. 307, pp. 14–25); *see Lord*, 223 F. Supp. 2d at 1279; *SFR Servs. LLC v. Elec. Ins. Co.*, No. 8:19-cv-2013, 2021 WL 1193284, at *10 (M.D. Fla. Mar. 30, 2021) ("Ultimately, the reliability inquiry . . . is simply whether [the

expert] sufficiently explained how he reached his conclusion, not necessarily whether he reached the 'right' conclusion to the exclusion of all others."). So he may testify.

Finally, Dr. Rouhani is an environmental scientist and engineer who rebutted the opinions of Sahu and Plaintiffs' statistical expert Dr. Cowan.[3] (Docs. 315-2, 315-7.) Plaintiffs move to exclude Rouhani's testimony purportedly for unreliable methodology—focusing on their competing theory of the case pertaining to historical emissions—but again, their attacks amount to nothing more than disagreement with his conclusions and the bases therefore rather than *Daubert* challenges. (Doc. 314.) Disagreement with an expert's premises is classic cross-examination fodder. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19CV2324, 2021 WL 8533032, at *5 (N.D. Fla. Nov. 16, 2021) (Rodgers, J.) (challenges to the basis for opinion goes to weight, not admissibility). And to the extent Cowan's testimony about death rates remains relevant (given the narrowing of this case to child congenital malformations), Plaintiffs' challenge to Rouhani's rebuttal of Cowan similarly fails. Rouhani disputes Cowan's conclusions, and Plaintiffs disagree with Rouhani's criticism. (Doc. 314, pp. 12–25; Doc. 315-2.) This is classic rebuttal, and classic material for cross. *See Abilify*,

---

[3] Lockheed's motion to exclude Dr. Cowan (Doc. 317) will be addressed separately.

299 F. Supp. 3d at 1368; *Quiet Tech.*, 326 F.3d at 1341. So Rouhani may testify.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' *Daubert* motions discussed herein (Docs. 301, 304, 305, 307, 314) are **DENIED** subject to the limitations stated above.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on December 19, 2024.



ROY B. DALTON, JR.
United States District Judge