# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

VERVICIA HENDERSON et al.,

      Plaintiffs,

v.

LOCKHEED MARTIN
CORPORATION,

      Defendant.

Case No. 6:21-cv-01363-RBD-DCI

## JOINT FINAL PRETRIAL STATEMENT

Pursuant to Local Rule 3.06(b) and the CMSO (Doc. 547), the Parties submit the following Joint Final Pretrial Statement.

## 1.  The basis for the Court's jurisdiction

The Court exercised jurisdiction over this case, against Plaintiffs' objection, pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).[1]

## 2.  A concise statement of the action

This is a civil action in which Plaintiffs seek compensatory and punitive damages from Defendant for injuries Plaintiffs allege were caused by Defendant's toxic emissions. Plaintiffs are Harrison Carp-Schursky and his parents, Aubrey Carp, Jordan Schursky, Benjamin Johnson, and his parents Jennifer Johnson, Drew

---

[1] (Doc. 80 (denying Plaintiffs' motion to remand).)

Johnson, Jack Turk, and his mother Cristina Eichstaedt. The Defendant is Lockheed Martin Corporation.

Count I of Plaintiffs' Fourth Amended Complaint is brought under Florida law by Harrison Carp-Schursky, Benjamin Johnson, and Jack Turk against Lockheed Martin; this count seeks strict liability for engaging in ultrahazardous activities.

Count II of Plaintiffs' Fourth Amended Complaint is brought under Fla. Stat. § 376.313 by Harrison Carp-Schursky, Benjamin Johnson, and Jack Turk against Lockheed Martin; this count seeks strict liability in accordance with the statute.

Count III of Plaintiffs' Fourth Amended Complaint is brought under Florida common law for public nuisance by Harrison Carp-Schursky, Benjamin Johnson, and Jack Turk against Lockheed Martin; this count seeks liability for common law public nuisance.

Count IV of Plaintiffs' Fourth Amended Complaint is brought under Florida common law for common law negligence by Harrison Carp-Schursky, Benjamin Johnson, and Jack Turk against Lockheed Martin; this count seeks liability for common law negligence.

Count VI of Plaintiffs' Fourth Amended Complaint is brought under Florida law by Aubrey Carp, Jordan Schursky, Jennifer Johnson, Drew Johnson, and Cristina Eichstaedt against Lockheed Martin; this count seeks liability for loss of consortium.

3. **A concise statement of each party's position**

**(a) Plaintiffs' Position**

Plaintiffs    contend    that    they    were    unknowingly    exposed    to    toxic

chemicals emitted by Defendant from Defendant's industrial property in Orlando, Florida. As a result of these toxic exposures, Plaintiffs contend they suffered birth defects. Plaintiffs further contend that, as a result of these birth defects, Plaintiffs Aubrey Carp, Jordan Schursky, Jennifer Johnson, Drew Johnson, and Cristina Eichstaedt suffered loss of consortium.

**(b) Defendant's Position**

Lockheed Martin denies that activities at its Sand Lake Road Complex (SLRC) caused contamination outside the complex itself or released amounts of PCE, TCE, or styrene capable of causing any of the Plaintiffs' health conditions. While SLRC used these chemicals, it did so in limited quantities and safely, consistent with then-current best practices, and in compliance with environmental laws and permits. For example, SLRC used only small amounts of TCE between 2008 and 2012, when it stopped using it. As to PCE and styrene, other businesses in Orange County emitted far more of these chemicals than Lockheed Martin. For decades, SLRC has been regulated by federal, state, and local environmental agencies. And none of them has ever taken legal action against Lockheed Martin for environmental violations. While Plaintiffs make much of its early operations,[2] SLRC's environmental practices have met or exceeded environmental laws and permits as they existed over time. When Lockheed Martin discovered past chemical discharges on its land, it voluntarily reported and remediated them. Over the last four decades, SLRC has had more than 8,000 sampling events at

---

[2] These operations took place before many environmental laws were even "on the books."

more than 1,800 locations, generating almost 400,000 analytical results that show no offsite impacts. Moreover, after Plaintiffs sued, Lockheed Martin's experts sampled offsite soil and air to ensure SLRC was not impacting its neighbors. Like the historical onsite sampling, that offsite sampling also showed no offsite contamination from SLRC.

Plaintiffs, however, did absolutely no sampling or testing, either before they sued or after, not even at the Golf Channel. They also ignored available monitoring data from the Orlando area. Instead, their hired expert, Dr. Sahu, used only a mathematical model with exaggerated inputs and assumptions and then compared exaggerated model outputs against EPA air screening assessment data from entirely different parts of Florida,[3] even though EPA itself warns that this data cannot be used for that purpose. And Plaintiffs' air modeler, Dr. Gray, admitted that he never compared the model's results against actual air concentrations to check whether they reflected reality. But regardless, Plaintiffs' modeled air concentrations at the Golf Channel are between hundreds and hundreds of thousands times lower than those recognized by EPA as capable of creating a risk of harm to even the most sensitive people—even assuming they were exposed to those levels for their entire lives. In addition, Lockheed Martin's expert industrial hygienist will testify that Dr. Sahu modeled outdoor air concentrations at the Golf Channel even though Plaintiffs worked inside. And Dr. Sahu never assessed whether any Plaintiff was exposed

---

[3] And not against measured background concentrations from the Orlando area.

indoors to the low outdoor concentrations he modeled.

Even so, Lockheed Martin's nationally respected toxicologist will testify that Plaintiffs didn't receive any meaningful exposures of PCE, TCE, or styrene from SLRC because Dr. Sahu's modeled concentrations were as low or lower than background for these chemicals in Orlando, lower than national averages, and much lower than those necessary to create health risks as established by government regulators. And Lockheed Martin's nationally respected experts will testify that there is no association whatsoever between PCE, TCE, or styrene and the congenital anomalies at issue at any level or any other adverse health conditions at the levels Dr. Sahu modeled.

Crucially, there is no reliable scientific evidence that it's even possible for these substances to cause congenital anomalies such as those Plaintiffs allege. And there is robust scientific evidence that children do not inherit their parents' environmental DNA damage. So even if parents had been exposed to levels of chemicals that could cause congenital defects (and they weren't), their children wouldn't have been harmed. Lockheed Martin's pediatric geneticist, Dr. Graham, the only testifying expert geneticist, will explain that there were genetic or other medical explanations for Plaintiffs' anomalies and that there is no scientific proof that children inherit their parents' environmental DNA damage. Spontaneous or accidental changes or mutations in germ cells cause most congenital anomalies, including those at issue here.

As the scientific and other evidence will establish that SLRC did not cause or contribute to Plaintiffs' conditions, Lockheed Martin denies their claims.

4. **A list of each exhibit with a notation of each objection**

The Parties' Revised Joint Exhibit List is attached as Exhibit A.

Plaintiffs' Revised Exhibit List is attached as Exhibit B, along with Defendant's objections.

Defendant's Revised Exhibit List is attached as Exhibit C, along with Plaintiffs' objections.

5. **A list of each witness by name only with a notation of: (A) the likelihood the witness will testify and (B) each objection to the witness's testifying**

Plaintiffs' Witness List is attached as Exhibit D, along with Defendant's objections.

Defendant's Witness List is attached as Exhibit E, along with Plaintiffs' objections.

6. **A list of each expert witness, with a notation of: (A) the substance of the testimony and (B) each objection to the witness's testifying**

**(a) Plaintiffs' Experts**

Dr. Ranajit Sahu will testify consistent with his reports dated June 01, 2022, August 1, 2022, September 05, 2022, February 13, 2023, and May 01, 2023, and his depositions taken on September 23, 2022 and May 29, 2023 including that:

- Defendant handled and used a wide variety of chemicals in manufacturing and related processes, as well as in remediation activities, over the relevant time period.

- Through use and disposal practices, Defendant released a wide range of hazardous air pollutants (HAPs) into the air; these included PCE, TCE, and

styrene as well as inorganic metal HAPs such as hexavalent chromium and
arsenic, along with many other HAPs.

- These HAPs dispersed into the air and into the surrounding area causing
  exposures to Plaintiffs.

- Defendant did not employ available air pollution controls or work practices
  to minimize emissions of HAPs from its industrial manufacturing processes.

- Defendant did not employ available air pollution controls or work practices
  to minimize emissions from its remediation activities.

- Defendant understood that the pollutants emitted were toxic, and capable of
  causing adverse health impacts and debilitating disease.

- Defendant knew or should have known that their practices would result in
  significant exposures to Plaintiffs and others in the surrounding community.

- Defendant's conduct in storing, handling and emitting HAPs did not meet a
  responsible standard of care.

- Defendant's irresponsible and uncontrolled emissions caused Plaintiffs to be
  exposed to levels of hexavalent chromium, arsenic, styrene, PCE and TCE
  far above background levels.

**OBJECTION:** Lockheed Martin objects to testimony regarding any constituents other
than PCE, TCE, and styrene because Plaintiffs stipulated that those were the only
chemicals at issue in this case.  (Doc. 414.)  That stipulation is binding. *See Spears v.
Bay Inn & Suites Foley, LLC*, 105 F.4th 1315, 1321 (11th Cir. 2024) ("[S]tipulations are

binding in civil cases."). There also is no evidence in the record that any other substances purportedly caused harm to any Plaintiff. Lockheed Martin also objects to any testimony about actions or omissions by Lockheed Martin outside the relevant period. Lockheed Martin maintains its objections asserted in its motion to exclude Dr. Sahu's opinion (Doc. 316). Dr. Sahu should not be permitted to testify as to any opinions not disclosed in his expert reports.

Dr. David Warburton will testify consistent with his reports dated September 03, 2024 and December 12, 2024, and his depositions taken on May 20, 2023 and January 30, 2025 including that:

- Exposure to TCE, PCE and styrene is capable of causing birth defects including bilateral clubfoot and brain anomalies, and Plaintiff Jordan Schursky's exposure to TCE, PCE and styrene, as shown by Dr. Sahu, more likely than not caused Plaintiff Harrison Carp-Schursky to be born with bilateral clubfoot and brain anomalies.

- Exposure to TCE, PCE and styrene is capable of causing birth defects including Klinefelter syndrome, and Plaintiff Jennifer Johnson and Plaintiff Drew Johnson's exposures to TCE, PCE and styrene, as shown by Dr. Sahu, more likely than not caused Plaintiff Benjamin Johnson to be born with Klinefelter syndrome.

- Exposure to TCE, PCE and styrene is capable of causing birth defects including cleft lip and palate, and Plaintiff Cristina Eichstaedt and Jonathan

Turk's exposures to TCE, PCE and styrene, as shown by Dr. Sahu, more

likely than not caused Plaintiff Jack Turk to be born with cleft lip and palate.

**OBJECTION:** Lockheed Martin maintains its objections asserted in its motion to

exclude Dr. Warburton's opinion (Doc. 312) and the motion for partial

reconsideration regarding his testimony (Doc. 485).  Dr. Warburton should not be

permitted to testify health conditions not at issue in this case or any opinions not

disclosed in his expert reports.

### (b) Defendant's Experts

- Michael Ballenger, P.E.—an expert in air quality dispersion modeling, Clean
  Air Act regulatory compliance, air permitting, pollutant risk assessment, and
  environmental auditing—opines that Dr. Ranajit Sahu's assessment of
  historical hazardous air pollutants concentrations at the Golf Channel is
  scientifically unsupported and unreliable. Ballenger asserts that Sahu relied on
  insufficient and non-speciated emissions data, misused the chemical
  management system as a surrogate for actual emissions, made unjustified
  assumptions about continuous and static SLRC operations, and misapplied
  modeling tools such as AERMOD.  Ballenger notes that Sahu failed to analyze
  indoor air exposure and improperly equated hypothetical outdoor
  concentrations with actual indoor exposures, without accounting for pollutant
  migration, indoor sources, or worker behavior.  Ballenger also states that Sahu
  ignored meteorological data showing the wind only blows from SLRC toward

the Golf Channel during work hours about 2.6% of the year, and that Sahu assumed other conditions that overstated SLRC's impact. Ballenger concludes that, by neglecting factors such as chemical degradation, deposition, alternative emission sources, and the infrequent occurrence of relevant wind direction, Sahu's approach cannot reliably reconstruct indoor exposures or causation with reasonable scientific certainty. Ballenger also concludes that Plaintiffs' alleged exposures at the Golf Channel would have been consistent with general regional background concentrations.

**OBJECTION:** Plaintiffs maintain their objections asserted in any relevant motion to exclude this expert's testimony. Expert should not be permitted to testify to any opinions not disclosed in his expert reports, or which are not supported by evidence.

- Kristine Davies—an expert in aerospace manufacturing processes, air quality regulatory compliance, permitting, emissions inventories, and regulatory analysis—opines that Sahu mischaracterizes processes and controls at SLRC, including describing outdated or unused processes. She opines that Lockheed Martin's conservative emissions calculations, regulatory compliance, and proactive efforts to reduce toxic material use and develop safer alternatives demonstrate responsible operation and community protection, contrary to Sahu's claims. Davies concludes that Sahu's methodologies and opinions are unreliable.

**OBJECTION:** Plaintiffs maintain their objections asserted in any relevant motion to exclude this expert's testimony. Expert should not be permitted to testify to any opinions not disclosed in her expert reports, or which are not supported by evidence.

- Stephen Emsbo-Mattingly—an expert in chemical environmental forensics—opines that there is no evidence of current or historical offsite impacts from SLRC to the Golf Channel. His forensic analysis demonstrates that ambient environment surrounding the Golf Channel contains ubiquitous constituents of concern (COCs) from various natural and anthropogenic sources, but those concentrations overwhelmingly fall below the Florida Department of Enviromental Protection's (FDEP) residential and industrial standards. His analysis shows a lack of patterns indicating that SLRC was a source of the COCs in the environment around the Golf Channel. Mattingly uses several lines of analysis and scientific evidence, including principal components analysis for chemical fingerprinting, spatial gradient analysis of contaminant concentrations, quantitative and qualitative analysis of onsite and offsite sampling data, historical research of analytical results, and both univariate and multivariate statistical techniques to reach these conclusions. Mattingly states that Sahu relied on speculative modeling unsupported by physical sampling or forensic analysis, and the scientific evidence refutes claims of SLRC-related exposure or injury in the environment around the Golf Channel.

**OBJECTION:** Plaintiffs maintain their objections asserted in any relevant motion to exclude this expert's testimony. Expert should not be permitted to testify to any opinions not disclosed in his expert reports, or which are not supported by evidence.

- John M. Graham, M.D.—an expert board-certified pediatrician and medical geneticist with over 40 years of expertise in clinical genetics, dysmorphology, teratology, and the diagnosis and causation of congenital malformations and developmental disorders, including the evaluation of genetic versus environmental causes of birth defects—opines that alleged exposures to PCE, TCE, and styrene at the Golf Channel cannot credibly explain the Plaintiffs' conditions. He explains that PCE, TCE, and styrene have not shown clear, consistent associations with developmental defects in human studies. He also explains that parental environmental exposures have not been shown to transfer to their children's genetics. For Benjamin Johnson's Klinefelter syndrome, Dr. Graham explains that advanced maternal age represents the most likely risk factor and notes no literature linking the chemicals at issue to the condition. For Jack Turk's unilateral cleft lip and palate, Dr. Graham explains that treating clinicians found a non-syndromic cleft with no teratogenic exposures. Dr. Graham also emphasizes the narrow developmental window for any environmental cause and notes no clear link to the chemicals at issue. Dr. Graham recommends genetic testing (chromosomal microarray and sequencing). For Harrison Carp-Schursky's bilateral clubfoot and stable left midbrain mass with midline brain anomalies, Dr. Graham will testify about the

result of Harrison Carp-Schursky's genetic mutations, including chromosomal mutations, uterine compression, and vascular disruption.

**OBJECTION:** Plaintiffs maintain their objections asserted in any relevant motion to exclude this expert's testimony. Expert should not be permitted to testify to any opinions not disclosed in his expert reports, or which are not supported by evidence.

- Robert C. James, Ph.D.—an expert toxicologist with over 50 years of experience specializing in evaluating human health risks from occupational and environmental chemical exposures, designing toxicological studies, and determining causation related to chemicals in indoor and outdoor air—opines that Plaintiffs have not shown reliable evidence that emissions from SLRC caused their health conditions. First, Plaintiffs' experts failed to establish that PCE, TCE, or styrene could cause their health conditions. Plaintiffs' experts failed to properly evaluate the scientific literature on causation. Among other failings, Plaintiffs' experts failed to consider the relevant dose of any of the chemicals of concern. Dr. James emphasizes that animal findings and protective regulatory values cannot substitute for human causation. Regarding specific causation, James opines that Warburton's opinions are scientifically unreliable because they rest on a narrow and misleading exposure assessment with relatively miniscule modeled outdoor-air concentrations of PCE, TCE, and styrene. He explains that Plaintiffs' everyday exposures to these chemicals from sources other than SLRC were likely far higher. He also explains that Plaintiffs' experts attempted to exaggerate the impact of the concentrations they

attribute to SLRC by comparing those concentrations to modeled data that EPA warns is not valid for such risk assessments. Dr. James cites Orange County monitoring data showing ambient levels of the chemicals far exceeding Sahu's modeled levels. He further faults Warburton for not performing a proper dose-response analysis. Dr. James shows through EPA reference concentrations that even worst-case alleged exposures yield hazard quotients and mixture indices thousands of times below regulatory levels of concern for all Plaintiffs. Dr. James also concludes that Warburton did not reasonably exclude alternative causes, including ubiquitous solvents and mutagens (e.g., benzene and 1,3-butadiene), and that higher, earlier background exposures undermine temporality. Finally, because total ambient and indoor exposures are higher that Plaintiffs' modeled contributions, Dr. James argues that even if Warburton's theory were accepted, the alleged birth defects would be attributable to ordinary urban exposures rather than Lockheed Martin.

**OBJECTION:** Plaintiffs maintain their objections asserted in any relevant motion to exclude this expert's testimony. Expert should not be permitted to testify to any opinions not disclosed in his expert reports, or which are not supported by evidence.

- Kenneth A. Mundt, Ph.D.—an expert epidemiologist specializing in occupational and environmental chemical exposures and causal evaluation of health outcomes—opined that PCE, TCE, and styrene could not cause Plaintiffs' health conditions and that, even if they could, Plaintiffs' alleged concentrations of those chemicals were too low to cause harm. Across PCE,

TCE, and styrene he found no clear, consistent epidemiological evidence linking parental exposure to these chemicals—singly or in mixtures—to the alleged outcomes, noting that many of Plaintiffs' experts' cited associations are weak, imprecise, or not specific to the chemicals or congenital anomalies at issue.  Dr. Mundt also critiques Warburton for his analysis and review of the relevant literature, including Warburton's failure to address the weight of the evidence, his substitution of "mixed solvents" for the chemicals at issue, and his failure to properly represent the scope and conclusions of the literature. Dr. Mundt concludes that, at environmentally relevant exposure levels, the epidemiological evidence does not demonstrate that parental exposure to PCE, TCE, or styrene can cause the Plaintiffs' alleged developmental conditions.  He also opines that these conditions often have recognized nonchemical risk factors (including genetics, parental age, certain maternal conditions, smoking, alcohol, and other medical or lifestyle factors) or remain idiopathic.  Dr. Mundt further explains that reliable specific-causation analysis requires measurable, individual exposure data which Plaintiffs lack.

**OBJECTION:** Plaintiffs maintain their objections asserted in any relevant motion to exclude this expert's testimony. Expert should not be permitted to testify to any opinions not disclosed in his expert reports, or which are not supported by evidence.

- Shahrokh Rouhani, Ph.D., P.E.—an expert in environmental science and environmental engineering, with specialized focus on environmental statistics, geostatistics, and spatial data analysis—opines that extensive environmental

data and conservative statistical and geostatistical analyses show that any chemicals of concern associated with SLRC's historical operations remained isolated and confined to the site, with no credible evidence of offsite impacts. With respect to offsite conditions, he analyzed measured soil and air samples collected in the surrounding site vicinity and compared them to samples from regional background locations using both parametric two-sample *t*-tests and nonparametric Mann-Whitney U tests. Those analyses show that offsite concentrations of PCE, TCE, and styrene are statistically indistinguishable from background concentration levels and, in several instances, lower in the site vicinity than in regional background concentration areas. Dr. Rouhani further finds that air measurements for PCE and TCE are predominantly non-detect or comparable across locations, and that styrene concentrations do not differ significantly between the site vicinity and background areas. Based on these results, he concludes that the measured offsite soil and air data provide no statistical or scientific support for claims of contaminant migration or elevated offsite exposure attributable to SLRC.

**OBJECTION:** Plaintiffs maintain their objections asserted in any relevant motion to exclude this expert's testimony. Expert should not be permitted to testify to any opinions not disclosed in his expert reports, or which are not supported by evidence.

- Rene Salazar, Ph.D., C.I.H.—an expert in industrial hygiene and exposure assessments—opines that Plaintiffs' experts failed to demonstrate any actual occupational exposure to contaminants from SLRC because, among other

things, they relied on speculative modeling rather than accepted industrial hygiene monitoring methods to assess alleged exposure, ignored extensive SLRC exposure data, and did not establish a complete exposure scenario involving a credible source, pathway, route, dose, and duration. He concludes that alleged contaminants would have been detected through Lockheed Martin's long-standing, OSHA-compliant industrial hygiene monitoring program if they had been present at hazardous levels, that modeling is a poor substitute for personal monitoring in determining individual exposure, and that increases above background concentrations do not equate to hazardous exposure absent a comparison to established health criteria. Dr. Salazar further opines that Plaintiffs' experts failed to account for transport limitations, indoor air dynamics, building pressurization, alternative exposure sources, or comparison to regulatory and professional exposure limits, which renders their opinions unreliable and insufficient to support conclusions about indoor occupational exposure.

**OBJECTION:** Plaintiffs maintain their objections asserted in any relevant motion to exclude this expert's testimony. Expert should not be permitted to testify to any opinions not disclosed in his expert reports, or which are not supported by evidence.

7. **A breakdown of the type and amount of monetary damages**

   **(a) Plaintiffs' Position**

   <u>Non-Economic Damages</u>

   For Plaintiffs Harrison Carp-Schursky, Benjamin Johnson, and Jack Turk:

Monetary compensation for physical pain and suffering, emotional distress, disfigurement, and loss of enjoyment of life.

For Plaintiffs Aubrey Carp, Jordan Schursky, Jennifer Johnson, Drew Johnson, and Cristina Eichstaedt: Monetary damages for loss of consortium.

Punitive Damages

All Plaintiffs seek punitive damages by reason that Defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard and indifference to the life, safety and rights of people exposed to Defendant's toxic pollution.

**(b) Defendant's Position**

Lockheed Martin disputes that any Plaintiff is entitled to recover damages.

Lockheed Martin disputes that loss-of-consortium Plaintiffs are entitled to recover punitive damages. *See, e.g.*, *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, No. 608CV466ORL28GJK, 2009 WL 2151176, at *2 (M.D. Fla. July 13, 2009) ("[P]unitive damages are not recoverable on a loss of consortium claim in Florida.").

Lockheed Martin renews its objection to any damages not properly presented in Plaintiffs' Rule 26 disclosures.

Lockheed Martin objects to any damages calculation based on mortality tables. No mortality tables were provided or substantiated during discovery, and no expert or other witness opined on any Plaintiffs' life expectancy.

**8. A list of each deposition offered in lieu of live testimony, unless the deposition is only for impeachment**

**(a) Plaintiffs' List**

- Kenneth Baker, March 23, 2023

- Lisbeth House, December 13, 2022

- Derek Huston, 30(b)(6) November 16, 2022

- Derek Huston, May 17, 2023

- Mark Lowery, May 31, 2023

- Scott McCann, April 18, 2023

- Michael Meredith, December 5, 2022

- Ronald Perlman, December 9, 2022

- Mark Roehl, May 12, 2023

- Corporate Representative, Allen Turner, February 8, 2023

- Allen Turner, December 12, 2022

- Dr. John G. Pappas, February 6, 2026.

Plaintiff will attempt to call all witnesses live. However, the designations included are being provided in the event a witness is unable to appear live.

### (b) Defendant's List

- Dr. Andrew Gray, May 8, 2023

- Dr. John Pappas, February 6, 2026 (TBD)

- Any witness identified on either Party's witness list who may become incapacitated or otherwise unavailable to testify at trial.

**9. A concise statement of each admitted fact**

- Lockheed Martin owned and operated a facility located at 5600 Sand Lake

Road, Orlando, Florida ("Sand Lake Road Complex" or "SLRC") during the
relevant time period.

- PCE, TCE, and Styrene are solvents, hazardous substances, and hazardous air
  pollutants (HAPs).

- Lockheed Martin's historical operations at SLRC caused PCE, TCE and
  Styrene to be released into the air at some points in time between 2008-2020..

- Discharges at SLRC resulted in PCE and TCE contamination in the
  groundwater at the site.

- As a result of these discharges, PCE and TCE exceeded groundwater cleanup
  target levels at certain times and locations at SLRC.

- Lockheed Martin used air stripping, air sparging, and soil vapor extraction to
  remove PCE and TCE from the groundwater.

- Plaintiff Cristina Eichstaedt has worked for the Golf Channel from 2008 to the
  present.

- Plaintiff Jack Turk was born to Ms. Eichstaedt on April 24, 2018, with a cleft
  lip and cleft palate.

- Plaintiff Jordan Schursky worked for the Golf Channel from 2016 to 2020.

- Plaintiff Harrison Carp-Schursky was born to Aubrey Carp on March 25, 2019,
  with a mid-brain anomaly and clubfoot.

- Jordan Schursky is the biological father of Harrison Carp-Schursky.

- Plaintiff Jennifer Johnson worked for the Golf Channel from 2011 to 2020.

20

- Plaintiff Drew Johnson worked for the Golf Channel from 2011 to 2020.

- Plaintiff Benjamin Johnson was born to Jennifer Johnson on July 8, 2020, with Klinefelter syndrome.

- Drew Johnson is the biological father of Benjamin Johnson.

**10. A concise statement of each agreed principle of law**

- Florida substantive law applies to the claims and defenses asserted by the Parties.

- The Federal Rules of Evidence and Federal Rules of Civil Procedure apply to this trial.

- The Parents' loss-of-consortium claims are derivative of their children's claims such that a finding for Lockheed Martin on the children's claims would foreclose the parents' claims.

- All principles of law set forth in the Parties' jointly submitted jury instructions 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 21, 26, 27, and 28.

**11. A concise statement of each issue of fact without incorporating another paper**

**(a) Plaintiffs' Position**

- Whether Lockheed Martin's operations at SLRC constituted an ultrahazardous activity.

- Whether Defendant was negligent in its handling, storing, remediating and disposing of toxic chemicals.

- Whether exposure to TCE, PCE and styrene is capable of causing birth defects,

including bilateral clubfoot and brain anomalies, Klinefelter syndrome, and cleft lip and palate.

- Whether Plaintiffs Jordan Schursky, Jennifer Johnson, Drew Johnson, and Cristina Eichstaedt, as well as Jonathan Turk, were exposed to TCE, PCE and styrene emitted by Defendant.

- If Defendant was negligent, whether Defendant's conduct was willful, wanton, and in reckless disregard of the rights of others, including Plaintiffs, such that punitive damages are warranted.

- Whether Defendant Lockheed Martin discharged hazardous substances as alleged in Plaintiffs' Complaint in violation of Fla. Stat. §§ 376.30, 376.302 *et seq*.

- Whether Lockheed Martin's use, storage, transport, handling, disposal, and emission of toxic wastes was a public nuisance.

- If Lockheed Martin's conduct was a public nuisance, whether Plaintiffs suffered injuries resulting therefrom.

- Whether Lockheed Martin's conduct was willful, wanton, and in reckless disregard of the rights of others, including Plaintiffs.

- Whether Plaintiffs established their claim for loss of consortium.

(b) **Defendant's Position**

- Whether Lockheed Martin's use of PCE, TCE, and styrene at SLRC during the relevant period was an ultrahazardous activity.

- Whether Lockheed Martin was negligent in its handling, storing, remediating,

and disposing of PCE, TCE, and styrene.

- Whether Plaintiffs Cristina Eichstaedt, Jordan Schursky, Jennifer Johnson, and Drew Johnson were exposed to PCE, TCE, and styrene from SLRC while working for the Golf Channel.

- Whether there are alternative sources of PCE, TCE, and styrene to which Plaintiff-parents Cristina Eichstaedt, Jordan Schursky, Aubrey Carp, Jennifer Johnson, and Drew Johnson were exposed.

- Whether exposure to PCE, TCE, or styrene at the concentrations modeled by Dr. Sahu and for the duration of exposure at issue **can** cause inheritable genetic mutations in parents that can cause cleft lip and cleft palate in their children.

- Whether exposure to PCE, TCE, or styrene at the concentrations modeled by Dr. Sahu and for the duration of exposure at issue **can** cause inheritable genetic mutations in parents that can cause mid-brain anomalies and clubfoot in their children.

- Whether exposure to PCE, TCE, or styrene at the concentrations modeled by Dr. Sahu and for the duration of exposure at issue **can** cause Klinefelter syndrome.

- Whether the modeling performed by Dr. Sahu was an accurate representation of concentrations of PCE, TCE, and styrene present at the Golf Channel building and originating from SLRC.

- Whether exposure to PCE, TCE, or styrene emitted from SLRC for the duration of exposure at issue **did** cause inheritable genetic mutations in Cristina Eichstaedt that caused a cleft lip and cleft palate in Jack Turk.

- Whether exposure to PCE, TCE, or styrene emitted from SLRC for the duration of exposure at issue **did** cause inheritable genetic mutations in Jordan Schursky that caused mid-brain anomalies and clubfoot in Harrison Carp-Schursky.

- Whether Drew Johnson's or Jennifer Johnson's exposure to PCE, TCE, or styrene emitted from SLRC for the durations of exposure at issue **did** cause Klinefelter syndrome in Benjamin Johnson.

- Whether there are other potential causes for Jack Turk's cleft lip and cleft palate.

- Whether there are other potential causes for Harrison Carp-Schursky's mid-brain anomaly and clubfoot.

- Whether there are other potential causes for Benjamin Johnson's Klinefelter syndrome.

- If Lockheed Martin was negligent, whether Lockheed Martin's conduct was willful, wanton, and in reckless disregard of the rights of others, including Plaintiffs, such that punitive damages are warranted.

- Whether Lockheed Martin discharged PCE, TCE, and styrene as alleged in Plaintiffs' Complaint in violation of Fla. Stat. §§ 376.30, 376.302 *et seq*.

- Whether Lockheed Martin's use, storage, transport, handling, disposal, and emission of toxic wastes was a public nuisance.

- If Lockheed Martin's conduct was a public nuisance, whether Plaintiffs suffered resulting special injuries.

- Whether the parent Plaintiffs experienced a compensable loss of consortium.

**12. A concise statement of each issue of law without incorporating another paper**

**(b) Defendant's Position**

- Whether Plaintiffs' no-safe-dose theory is cognizable in the Eleventh Circuit.

- Whether evidence concerning exposure to mixed solvents is sufficient to establish claims based upon on exposure to PCE, TCE, and styrene.

**13. A list of each pending motion or other unresolved issue**

- Motion to Strike Non-Responsive Portions of Dr. John Graham's Supplemental Expert Report (Doc. 588)

- Joint Motion to Update the Case Caption (Doc. 611)

- Plaintiffs' Motion in Limine (Doc.).

- Lockheed Martin's Motion in Limine (Doc.).

- Whether Plaintiffs can play Dr. Pappas' deposition testimony in their case in chief.

- Whether the Parties' Attorneys can conduct brief voir dire.

- Lockheed Martin's objections to Plaintiffs' proposed voir dire.

- Whether Lockheed Martin's Hazardous Material Management Program Reports (HMMPs), which include among other details, sensitive national security information, and are strictly regulated by Section 38 of the Arms

Export Control Act (AECA), 22 U.S.C. § 2778, and the Export Control

Reform Act of 2018 (ECRA), 50 U.S.C. §§ 4801–4852, can be introduced at

trial.

- If the HMMPs are allowed to be introduced at trial, what protections—
  including a partial sealing of the courtroom and the record—would be
  required to avoid violations of the AECA and ECRA by any persons at or
  after trial, including Parties, their counsel, witnesses, courtroom personnel,
  jurors, and spectators.

**14. A statement of the usefulness of further settlement discussions**

The Parties do not anticipate any further settlement discussions proving useful

to resolution of the claims or defenses asserted.

**15. Anticipated Length of Trial Based on the Issues Remaining at the Conclusion
of the Pretrial Meeting**

The parties anticipate that the trial will take between fifteen and twenty trial

days.

<u>**Local Rule 3.06(b)(15) Certification**</u>

In preparing this final pretrial statement, I have aimed for the just, speedy, and

inexpensive resolution of this action.

Respectfully submitted,

Date: March 13, 2026

*/s/ David B. Weinstein*
David B. Weinstein (FBN 604410)
weinsteind@gtlaw.com
Ryan T. Hopper (FBN 0107347)
hopperr@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Blvd., Ste. 1900
Tampa, Florida 33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900

/s/
Pete V. Albanis (FBN: 0077354)
palbanis@forthepeople.com
T. Michael Morgan  (FBN:06229)
mmorgan@forthepeople.com
MORGAN & MORGAN, P.A.
2150 Goodlette-Frank Rd. N, Ste 750
Naples, FL 34102
P: (239) 432-5504
F: (239) 204-3798

Rene F. Rocha
rrocha@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
1100 Poydras St Suite 2900
New Orleans, LA 70163
P: (504) 636-6310
F: (504) 636-3018