**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| VERVICIA HENDERSON et al., | |
| Plaintiffs, | |
| v. | Case No. 6:21-cv-01363-RBD-DCI |
| LOCKHEED MARTIN CORPORATION, | |
| Defendant. | |

### PLAINTIFFS' OPPOSED MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiffs file this Opposed Motion To Remand For Lack Of Subject Matter Jurisdiction, as follows:

### Introduction

Seven days ago, Lockheed informed this Court that it has abandoned its prior assertion that the federal officer removal statute establishes subject matter jurisdiction (Doc. 635 at p. 1 n.1). No "colorable" federal defenses "appear in the pretrial statement, which merged into the pleadings." *Id.* (cleaned up). On this basis alone, remand is required because no federal question exists and subject matter jurisdiction is lacking.[1]

---

[1] 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999); *Worldwide Aircraft Servs., Inc. v. Worldwide Ins. Servs.*,

1

The record before this Court establishes that Lockheed's attempt to align itself with the federal government has been questionable. At the start of this case, Lockheed emphasized its supervision by the United States government in "the manufacture, performance, safety, maintenance, and mission-accomplishment of missile, fire-control, and other systems . . . ." (Doc. 1-1 at p. 3, ¶ 11). Just before the start of trial, though, Lockheed changed its story and provided an untimely declaration from another employee. (Doc. 633-1 at pp. 1-5, ¶¶ 1-23). This Court relied on Lockheed's representation in denying remand and in concluding that Lockheed "was acting under the Government for work relating to the Government." (Doc. 80 at p. 3 (cleaned up)). Subsequent events have shown that these representations are incorrect. Further, the one-year deadline to remove based on diversity of citizenship has come and gone. 28 U.S.C. § 1446(c)(1); *see Madeira Condo. Ass'n, Inc. v. Chubb Custom Ins. Co.*, 785 F. Supp. 3d 1153, 1156 (M.D. Fla. 2025). Finally, there is no basis for this Court to exercise equitable jurisdiction because the trial has not begun and the jury has not reached a verdict.

This Court should immediately remand this improperly removed case.

## Arguments and Authorities

### A. Legal Standard

Federal courts have limited jurisdiction. *See Am. Tobacco Co.*, 168 F.3d at 409. They can only decide "those cases within the judicial power of the United States as

---

*LLC*, 2024 WL 4956723, at *2 (M.D. Fla. Nov. 18, 2024); *Barton v. Lamberti*, 2008 WL 11411257, at *2 (S.D. Fla. June 3, 2008).

defined by Article III of the Constitution or otherwise authorized by Congress." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) (cleaned up). All doubts about jurisdiction are resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

Jurisdiction is not and can never be presumed. *Am. Tobacco Co.*, 168 F.3d at 409. Indeed, courts have an ongoing obligation to examine whether federal jurisdiction exists. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, ***the case shall be remanded***." (emphasis added)). Removal jurisdiction, in turn, "is no exception to a federal court's obligation to inquire into its own jurisdiction." *Am. Tobacco Co.*, 168 F.3d at 409. Where, as here, subject matter jurisdiction is lacking, remand is required. *Id.*; *see also* 28 U.S.C. § 1447(c); *Fed. Nat'l Mortg. Ass'n v. Bishop*, 2010 WL 11651164, at *1-*2 (N.D. Ga. Oct. 29, 2010); *cf. Wall v. Moultrie*, 2011 WL 6182426, at *2-*3 (M.D. Ala. Dec. 12, 2011).

## B. <u>Analysis</u>

### 1. <u>Lockheed Has Abandoned Its Reliance On Section 1442(a)(1).</u>

This Court denied Plaintiffs' motion to remand and held that Lockheed met its burden of demonstrating jurisdiction under 28 U.S.C. § 1442(a)(1). (Doc. 80 at p. 4; Doc. 1 at p. 2). Lockheed, however, no longer relies on this statute or contends that it establishes jurisdiction. (Doc. 615 at p. 1 n.1). Indeed, ***seven days ago***, in response to Plaintiffs' opposed motion to seal Hazardous Material Management Programs, Lockheed made the following concession:

[1] Plaintiffs argue that Lockheed Martin relied on the HMMPs for its defenses. That is true—as far as it goes. The HMMPs previously were part of Lockheed Martin's colorable federal defenses (*see* Doc. 56-1 at 2), but only in a different landscape. At the time of removal, dozens of Plaintiffs alleged harm spanning more than fifty years and involving over thirty-four substances, several of which the HMMPs strictly regulated or mandated. The case is now far narrower. Only three Plaintiff-families remain, alleging exposure over roughly 12 years, and only to PCE, TCE, and styrene. Because the HMMPs do not dictate Lockheed Martin's use of PCE, TCE, and styrene, Lockheed Martin will not—and cannot—rely on the HMMPs for federal defenses at trial. Nor does that defense appear in the pretrial statement, which merged into the pleadings. (Doc. 81 at 20.)

*Id.*[2] Lockheed has judicially admitted that it will not "rely on the HMMPs for federal defenses at trial." *Id.*[3] And Lockheed also judicially admits that the federal defense is not part of the Joint Pretrial Statement (Doc. 620 at pp. 1-27). Lockheed's pleadings, in turn, "merge into the PTS, and the PTS then controls the trial of this matter." (Doc. 81 at p. 20). Consequently, the only basis for federal jurisdiction no longer exists:

| LOCKHEED'S NOTICE OF REMOVAL | LOCKHEED'S RESPONSE TO PLAINTIFFS' OPPOSED MOTION TO SEAL |
|---|---|
| "The acts forming the basis of Plaintiffs' assertions were taken by Lockheed Martin or its predecessor companies pursuant to federal authority and under color of federal office." (Doc. 1 at p. 8, ¶ 24). | "Nor does that defense appear in the pretrial statement, which merged into the pleadings. (Doc. 81 at p. 20)." (Doc. 635 at p. 1 n.1.) |

[2] Lockheed also claims that it no longer manufactures missiles or weapons at SLRC. (Doc. 635 at p. 1 n.2).

[3] "[A] party is bound by the admissions in his pleadings." *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) (cleaned up); *see also Holiday Inns, Inc. v. Alberding*, 683 F.2d 931, 935 (11th Cir. 1982); *Bejerano v. Flex Fla. Corp.*, 2020 WL 4059604, at *5-*6 (S.D. Fla. July 20, 2020); *Coface N. Am. Ins. Co. v. Davis*, 2019 WL 7831142, at *10 (N.D. Ga. June 21, 2019); *Vaughan v. M-Entertainment Props., LLC*, 2016 WL 11746230, at *1 (N.D. Ga. Dec. 21, 2016). Statements in pretrial orders can constitute judicial admissions. *E.g.*, *Davis*, 2019 WL 7831142, at *10. Overall, "it is fundamental that judicial admissions are proof possessing the highest possible probative value." *Hill v. FTC*, 124 F.2d 104, 106 (5th Cir. 1941).

## 2.  <u>The Federal Officer Defense Has Always Been Dubious.</u>

As the removing party, Lockheed bore the burden of establishing federal jurisdiction. *E.g.*, *Sheridan Healthcorp, Inc. v. Aetna Health Inc.*, 161 F. Supp. 3d 1238, 1243 (S.D. Fla. 2016). At the outset of this case, Lockheed emphasized its close relationship with the United States government in sensitive national security matters:

> 11.    In sum, through its procurement relationships with Lockheed Martin and its predecessors, the United States military has maintained an embedded oversight presence through its DCMA and DCAA activity and has continually overseen the manufacture, performance, safety, maintenance, and mission-accomplishment of missile, fire-control, and other systems produced throughout my 37-year career here at SLRC.

(Doc. 1-1 at p. 3, ¶ 11). Additional statements are as follows:

- Lockheed consistently used operations at Sand Lake Road Complex to satisfy its "obligations to the United States under procurement and other contracts. These contracts required the production of missiles, fire-control systems, and other equipment for the U.S. military." (Doc. 56-1) at p. 1, ¶ 2;

- "[T]he U.S. Government has, for decades, entered into contracts with Lockheed Martin for the procurement of Air-to-Ground Missile Systems, including Hellfire missiles." *Id.* at p. 1, ¶ 4;

- "The HMMP reports memorialize Lockheed Martin's approach to eliminating, minimizing, or controlling hazardous materials and waste in the Hellfire design

and manufacturing process . . . ." *Id*. at p. 2, ¶ 7.

The statements in Lockheed's removal papers are equally telling:

- "Since the 1950s, Lockheed Martin and its predecessors have performed many of their essential U.S. Government contracting services from the Sand Lake Road Complex ('SLRC') in Orlando—a location selected for its proximity to military operations at Cape Canaveral" (Doc. 1 at p. 2, ¶ 2);

- "At SLRC, Lockheed Martin has produced Pershing ballistic missiles deployed during the Cold War, Patriot and Hellfire missile systems deployed in the Gulf War, targeting and navigation systems deployed in multiple conflicts, and myriad other missile and fire-control systems ordered and deployed by the U.S. military" (Doc. 1 at p. 2, ¶ 2);

- "These operations—all of which have been subject to exacting Government scrutiny and control—are the focus of this toxic-tort case" (Doc. 1 at p. 2, ¶ 3);

- "[T]he wide net Plaintiffs have misguidedly cast encompasses operations that relate directly to Lockheed Martin's core work for the Government and consequently implicates multiple federal defenses . . . ." (Doc. 1 at p. 3, ¶ 5).

Plaintiffs pointed out the substantive deficiencies in Lockheed's removal. (Doc. 34 at pp. 1-25). Plaintiffs emphasized that Lockheed had not identified a contract pursuant to which it mishandled toxins at SLRC. *Id*. at p. 4. Plaintiffs pointed out that Lockheed had not identified a "uniquely federal interest" in the handling of toxins.

And Plaintiffs noted that the federal officer defense does not apply to the personal injury claims here. *Id.*

After removal, Lockheed never sought summary judgment on Plaintiffs' ultrahazardous activities claims. Lockheed never sought to correct the statements in the declaration supporting its removal. Last month, though, Lockheed filed its revised omnibus motion in limine (Doc. 625), which contained the following representation:

> Lockheed Martin's SLRC has not manufactured any aircrafts, ordinances, or other munitions since the 1990s. SLRC is primarily a research and development facility. . . .

*Id.* at p. 22. Also, Lockheed recently included an untimely declaration from Allen Turner in its opposition to Plaintiffs' motion to seal (Doc. 633-1 at pp. 1-5, ¶¶ 1-23). Mr. Turner, for the first time, disclaimed the extent of Lockheed's activity at SLRC:

(1) "The manufacturing of complete missile systems at SLRC ceased by the 1990s."

*Id.* at p. 2, ¶ 10;

(2) "Since the 1990s, SLRC has been a research and development and precision manufacturing facility that produces component parts used in guidance and navigation systems and similar applications." *Id.* at p. 2, ¶ 11;

(3) "SLRC does not manufacture fully assembled missiles or any other complete weapon systems." *Id.* at p. 2, ¶ 12.

Mr. Turner's untimely declaration includes quite a few evasive statements:

(1) "While ***SLRC may manufacture small components for a HELLFIRE missile system***, the complete missiles themselves are not manufactured at SLRC."

*Id.* at p. 2, ¶ 13 (emphasis added);

7

(2) "While ***SLRC may manufacture small components for a Joint Air-to-Surface Standoff missile program***, the complete missiles themselves are not manufactured at SLRC." *Id*. at p. 3, ¶ 14 (emphasis added);

(3) "While ***SLRC may manufacture small components for a Long Range Anti-Ship missile program***, the complete missiles themselves are not manufactured at SLRC." *Id*. at p. 3, ¶ 15 (emphasis added);

(4) "While ***SLRC may manufacture small components for a Javelin missile program***, the complete missiles themselves are not manufactured at SLRC." *Id*. at p. 3, ¶ 16 (emphasis added).

The reason for Lockheed's improper, abrupt change in position is apparent—to attempt to improperly constrict Plaintiffs' presentation of evidence at trial.[4] To prevail on its federal officer defense, Lockheed would have to prove: (1) Lockheed warned the federal government of the risks associated with the handling of hazardous and extremely toxic chemicals; and (2) The United States government told Lockheed to

---

[4] This change of position violates the "Mend the Hold" doctrine. *O'Bryan v. Linton*, 41 So. 2d 169, 171 (Fla. 1949) ("So it is our conclusion that the defendant in this case could not plant his defense on objections which occurred to him after the suit was impending . . . ."); *Hodkin v. Perry*, 88 So. 2d 139, 140 (Fla. 1956) ("[A] party cannot, either in the course of litigation or in dealings in pais, occupy inconsistent positions." (cleaned up)); *Salcedo v. Asociacion Cubana, Inc.*, 368 So. 2d 1337, 1339 (Fla. 3d DCA 1979) Today, we might say that the courts will not allow the practice of the "Catch-22" or "gotcha!" school of litigation to succeed."); *see also Ohio & Miss. Rwy. Co. v. McCarthy*, 96 U.S. 258, 267-68 (1877); *Yampol v. Turnberry Isle S. Condo. Ass'n, Inc.*, 143 So. 3d 1144, 1146 (Fla. 3d DCA 2014); *B & G Aventura, LLC v. G-Site Ltd. P'ship*, 97 So. 3d 308, 310 (Fla. 3d DCA 2012); *Heimer v. Travelers Ins. Co.*, 400 So. 2d 771, 773 (Fla. 3d DCA 1981); *cf. Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 362 (7th Cir. 1990) ("[T]he phrase is a nineteenth-century wrestling term, meaning to get a better grip (hold) on your opponent."). Plaintiffs reserve the right to seek appropriate relief on this issue.

release hazardous chemicals anyway. *See Harduvel v. Gen. Dynamics*, 878 F.2d 1311, 1321 (11th Cir. 1989). Proving this defense essentially entails Lockheed admitting liability (distribution of hazardous chemicals with knowledge of risks) and general causation (existence of risks). And in sum, Lockheed has known since the beginning of this case that the United States government never told Lockheed to engage in allowing the discharge of toxic, hazardous substances in close proximity to residential neighborhoods. Instead, Lockheed regrettably chose to change its substantive positions based on strategic considerations. Lockheed's divergent positions, though, have made at least one thing clear—subject matter jurisdiction no longer exists.

### 3.  <u>The Deadline To Remove Based On Diversity Of Citizenship Has Expired.</u>

Lockheed did not remove this case based on diversity of citizenship. (Doc. 1 at pp. 1-19, ¶¶ 1-52).[5] Nor could Lockheed have done so; at the time of removal, complete diversity did not exist (Doc. 1-2 at p. 8, ¶ 29, at p. 19, ¶ 90). Although complete diversity of citizenship now exists, remand is quite proper because the one-year deadline for Defendants to remove this case has long since passed. 28 U.S.C. §§ 1446(b)(3), 1446(c)(1); *Chubb Custom Ins. Co.*, 785 F. Supp. 3d at 1156; *A.S v. SmithKline Beecham*, 769 F.3d 204, 211-15 (3d Cir. 2014) (second removal untimely and rejecting tolling and relation-back arguments).[6]

---

[5] The sole basis for removal was the federal officer removal statute. (Doc. 1 at p. 2) ("Jurisdiction exists under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), as amended by the Removal Clarification Act of 2011.").

[6] *See also Benson v. SI Handling Sys.*, 188 F.3d 780, 782–83 (7th Cir. 1999) ("A premature removal may lead to a perfectly justified remand; but when matters change—for example, by dismissal of a party whose presence spoiled complete diversity of citizenship …—the case

4. **Equitable Jurisdiction Does Not Exist Here.**

Lockheed may well contend that equity supports this Court retaining jurisdiction. *Cf. Caterpillar Inc. v. Lewis*, 519 U.S. 61, 75 (1996) ("Once a diversity *case has been tried* in federal court, … considerations of finality, efficiency, and economy become overwhelming.") (emphasis added). But the equities counsel in favor of remand here. Voir dire has not occurred. No evidence has been presented. No verdict has been taken. On this record, equitable jurisdiction is inapplicable.

## Conclusion

Lockheed voluntarily chose to completely abandon its only proffered basis for federal jurisdiction before trial. This Court should consequently grant Plaintiffs' Opposed Motion To Remand For Lack Of Subject Matter Jurisdiction. 28 U.S.C. § 1447(c); *see, e.g.*, *Worldwide Aircraft Servs., Inc. v. Worldwide Ins. Servs., LLC*, 2024 WL 4956723, at *2 (M.D. Fla. Nov. 18, 2024); *Barton v. Lamberti*, 2008 WL 11411257, at *2 (S.D. Fla. June 3, 2008). Alternatively, if this Court declines to remand this case, this Court should preclude Lockheed from contending that its activities at SLRC were neither ultrahazardous nor abnormally dangerous. *See Linton*, 41 So. 2d at 171; *Perry*, 88 So. 2d at 140; *Salcedo*, 368 So. 2d at 1339.

---

may be removed, *provided only that it is less than one year old*.") (emphasis added); *cf. Crum v. Hankook Mfg.*, 2020 WL 8465442, at n.6 (S.D. Ala. Dec. 28, 2020), report and recommendation adopted, 2021 WL 439966 (S.D. Ala. Feb. 8, 2021) ("Because the second removal occurred … before the 1-year anniversary of the commencement of the case, the 1-year bar on diversity removals is inapplicable here.").

10

Respectfully submitted,

Date: April 8, 2026

*/s/ Michael M. Gallagher w/permission*
Rene F. Rocha*
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
1100 Poydras St., Suite 2900
New Orleans, LA 70163
rrocha@ForThePeople.com
P: (504) 636-6310
F: (504) 636-6301

T. Michael Morgan
FL Bar No. 62229
MORGAN & MORGAN, P.A.
20 N Orange Ave., Suite 1600
Orlando, FL 32801
mmorgan@ForThePeople.com
P: (407) 418-2031
F: (407) 245-3384

Frank M. Petosa
FL Bar No. 972754
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
8151 Peters Road, 4th Floor
Plantation, FL 33324
fpetosa@ForThePeople.com
P: (954) 327-5366
F: (954) 327-3018

*\*Pro Hac Vice*
*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this response was served via CM/ECF on all counsel of record on April 8, 2026.

*/s/ Michael M. Gallagher*
Michael M. Gallagher*

11

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 3.01(g), I certify that on April 8, 2026, counsel for Plaintiffs and counsel for Lockheed conferred by telephone in an attempt to resolve this motion without Court intervention. Specifically, I spoke with Ryan Hopper, Chris Torres, and David Weinstein about this motion by telephone and we discussed the issues set forth in this motion at length during two telephone calls. Lockheed advised that it opposes this motion, which is submitted to this Court for adjudication.

*/s/ Michael M. Gallagher*
Michael M. Gallagher*
