UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HARRISON CARP-SCHURSKY;
AUBREY CARP; JORDAN
SCHURSKY; BENJAMIN
JOHNSON; JENNIFER JOHNSON;
DREW JOHNSON; JACK TURK; and
CRISTINA EICHSTAEDT,

       Plaintiffs,

v.                                                        Case No. 6:21-cv-1363-RBD-DCI

LOCKHEED MARTIN
CORPORATION,

       Defendant.

_____

## OMNIBUS ORDER NO. 2

This Order resolves various pretrial matters.

### I.     Plaintiffs' Motion in Limine

Plaintiffs move to exclude various items in limine (Doc. 626), which

Lockheed opposes (Doc. 629).

1.     Reference to attorney advertising or the circumstances surrounding retention of counsel is **EXCLUDED** without objection by Lockheed.

2.     The request to exclude reference to Lockheed's "good corporate character" or similar is **DENIED WITHOUT PREJUDICE**. This request is too vague and overbroad for resolution on a limine basis without context.[1] Plaintiffs may raise contemporaneous objections to

---

[1] *See generally In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009).

particular pieces of evidence at trial.

3. The request to exclude reference to the aerospace industry as a whole is **DENIED WITHOUT PREJUDICE** for the same reason.

4. The request to exclude reference to hypothetical alternate sources of chemicals is **DENIED WITHOUT PREJUDICE** for the same reason.

5. Reference to other victims[2] is **EXCLUDED**, and the parties are cautioned that this ruling applies to both sides. The Court went to great lengths to examine specific causation regarding particular claimants. Neither side is going to be allowed to use this trial to get into who else did, or did not, get ill. Given that people had different jobs at different times in different parts of the facility and different medical histories, reference to other victims **or** others in the vicinity who did not get sick would be irrelevant, unduly prejudicial, and highly confusing to the jury, and it would improperly end-run the Court's *Daubert* gatekeeping responsibilities.

6. The request to prohibit Lockheed from arguing that regulatory compliance absolves it of liability is **DENIED WITHOUT PREJUDICE**. The Court will not issue a blanket prohibition on general references to regulatory standards, as much of the case concerns data collected for regulatory compliance purposes. But a contemporary objection should be made if Lockheed improperly suggests that regulatory compliance is the standard for determining liability, and, if necessary, the Court will give a limiting instruction to correct that misimpression.

7. The request to prohibit Lockheed from referencing Plaintiffs' parents' use of drugs, alcohol, or tobacco is **DENIED WITHOUT PREJUDICE**. Plaintiffs should object contemporaneously at trial and the Court will weigh the admission of such evidence in context.

8. The request to prohibit reference to Plaintiffs' parents' other medical conditions is **DENIED WITHOUT PREJUDICE** to contemporaneous objection.

9. The request to prohibit Lockheed from asking Plaintiffs' parents their opinions about purported "expert" topics pertaining to their allegations is **DENIED WITHOUT PREJUDICE** to contemporaneous objection.

---

[2] Lockheed, in its response, asks the Court to prohibit Plaintiffs' counsel from referring to Plaintiffs as "victims," but it did not include this request in its limine motion, and seeking relief in a response is inappropriate. (Doc. 629, p. 4 n.5.) So Lockheed should object contemporaneously if this becomes an issue.

10. The request to prohibit reference to post-exposure visits to the facility by Kristine Davies is **DENIED** given lack of context.

11. The request to exclude reference to post-suit sampling is **DENIED WITHOUT PREJUDICE** to contemporaneous objection.

12. This item concerning demonstratives has been referred for U.S. Magistrate Judge Daniel C. Irick's disposition and is **TAKEN UNDER ADVISEMENT**.

So Plaintiffs' motion in limine (Doc. 626) is **GRANTED IN PART, DENIED IN PART, AND TAKEN UNDER ADVISEMENT IN PART** as set forth above.

## II.    Lockheed's Motion in Limine

Lockheed moves to exclude various items in limine (Doc. 625), which Plaintiffs oppose (Doc. 628).

1. The request to preclude evidence and argument about arsenic, hexavalent chromium, and chemicals other than the three substances still at issue—PCE, TCE, and styrene—is **GRANTED**. Again, a focus on these substances would be irrelevant, unduly prejudicial, confusing to the jury, and would improperly circumvent the Court's *Daubert* gatekeeper role. The Court has found that expert testimony on **only** these three substances as it pertains to causation is sufficiently reliable to put before the jury.

2. This item pertaining to HMMPs is **TAKEN UNDER ADVISEMENT** pending the upcoming hearing. (Doc. 659.)

3. The request to preclude testimony from former plaintiffs and nonparties about alleged harms is **GRANTED** for the same reason in Plaintiffs' limine motion No. 5 above. The fact that the parties could not come to an agreement on this issue when they are making the same argument on both sides is disappointing, given the Court's explicit instruction to narrow the issues after further meet-and-confer.

4. Lockheed's request to preclude Plaintiffs' treating physicians from offering causation opinions is **DENIED AS MOOT** given the parties' agreement that Dr. Pappas is not affected and that neither side will otherwise elicit causation opinions from other treating doctors. Nevertheless, the Court is vexed by the parties' lack of citation to the

3

binding opinion on this exact issue, *Cedant v. United States*, 75 F.4th 1314 (11th Cir. 2023), which sets out clearly that treating physicians may testify as to causation without an expert report. *Id.* at 1325 ("[T]he district court believed that caselaw required treating physicians to submit Rule 26(a)(2)(B) reports when testifying on causation. But that approach is divorced entirely from the text of Rule 26(a)(2) . . . ." (citation omitted)).

5.    The Court is skeptical that ATSDR toxicological profiles are admissible. *See United States v. Scrima*, 819 F.2d 996, 1002 (11th Cir. 1987) ("Rule 703, however, is not an open door to all inadmissible evidence disguised as expert opinion."). But the Court **RESERVES RULING** on Lockheed's request to admit this evidence, pending a sponsoring witness explaining its evidentiary value and argument about hearsay.

6.    The Court **RESERVES RULING** on Lockheed's request to introduce summary tables, given the lack of context and expert foundation. The parties should raise this issue contemporaneously.

7.    The request to exclude mention of "clusters" is **GRANTED**. While Dr. Warburton has mentioned clusters twice in passing very briefly— once in his deposition and once at the hearing—he did not give an opinion on clusters anywhere in any of his reports, and it accordingly is not one of the opinions that the Court found was reliable and helpful in the *Daubert* ruling. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (expert report must contain "complete statement of all opinions . . . and the basis and reasons for them"); *cf. Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 825 (11th Cir. 2009) (affirming exclusion where expert disclosed additional bases for opinion during *Daubert* hearing that were not disclosed in report). The relative health of others is not what this case is about. Testimony about clusters would be unduly prejudicial, would open the door to evidence on other "victims" and other employees who did not get sick that the Court has already excluded, and would undermine the Court's gatekeeping responsibility because the opinion was not properly disclosed. So it is **EXCLUDED**.

8.    The request to preclude Plaintiffs from seeking damages valued by any formula other than the formula in their Rule 26 disclosures (*see, e.g.*, Doc. 557-3, p. 6) is **DENIED**. As to non-economic damages,[3] the

---

[3] Lockheed also seeks to exclude economic damages (Doc. 625, p. 17), but Plaintiffs do not

standard is not exact, and the jury may come to whatever conclusion has its footing in the evidence. *See Akridge v. Sch. Bd. of Alachua Cnty.*, No. 1:17CV104, 2019 WL 13085000, at *1 (N.D. Fla. Oct. 2, 2019) (Walker, C.J.) (acknowledging variety of approaches on this issue). As long as Plaintiffs do not argue a method that results in a figure higher than what was disclosed to Lockheed, the Court will not overly restrict their argument.

9.     The request to exclude mention of Lockheed's financial condition is **DENIED**. This request is, in fact, a belated motion to bifurcate punitive damages into a separate phase of trial (Doc. 625, p. 19), which Lockheed should have filed earlier in a separate, properly supported motion. *See* Local Rule 3.01. Lockheed moved for severance (of parties under Rule 21, not issues under Rule 42) back in 2023, and it specifically noted the punitive damages issue at that time, but it did not seek separate trials at that point—when the issue could have been properly briefed, heard, and considered in conjunction with the calendar. (*See* Doc. 257, p. 2.) At this late stage, the Court has been preparing the calendar for this lengthy trial for many months. In the Court's sound discretion, deferring punitives to a separate phase of trial would not further convenience or promote efficiency but rather overly complicate an already long and complex trial, so bifurcation is inappropriate. *See* Fed. R. Civ. P. 42; *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1301 (11th Cir. 2001). Any risk of prejudice by taking wealth evidence during the main trial can be cured by limiting instructions. *See, e.g., McLeod v. Llano*, No. 17CV6062, 2021 WL 1669732, at *3 (E.D.N.Y. Apr. 28, 2021) (denying motion to bifurcate where it would needlessly prolong trial and any prejudice could be mitigated through limiting instruction); *Anglin v. My Sons Logistics, LLC*, No. 2:24-CV-151, 2025 WL 332553, at *1 (N.D. Tex. Jan. 29, 2025) (rejecting motion to bifurcate based on convenience and economy, finding that federal procedural law rather than state law applied in accordance with Rule 42,[4] and concluding that any risk of prejudice could be overcome by carefully crafted jury instructions); *Aikens v. Cent. Ore. Truck Co.*, No. 4:20-CV-567, 2021 WL 4263169, at *2 (E.D. Tex. Sep. 20, 2021) (rejecting bifurcation due to court's busy trial

---

ask for those.

[4] While Lockheed cites *W.R. Grace & Co. v. Waters*, 638 So. 2d 502 (Fla. 1994), it does not explain why Florida state law would apply on this federal procedural bifurcation issue. (Doc. 625, p. 19.)

calendar and finding that defendants did not show prejudice). The Court will make sure any evidence of Lockheed's wealth is confined and not made a feature throughout the trial, and the Court will ensure that Lockheed's relative wealth may only be considered if the jury finds liability for punitive damages. Likely, the jury pool in this area is generally aware that Lockheed is a large company, undercutting the risk of unfair prejudice.

10.    This item concerning demonstratives has been referred for Judge Irick's disposition and is **TAKEN UNDER ADVISEMENT**.

11.    This item concerning demonstratives has been referred for Judge Irick's disposition and is **TAKEN UNDER ADVISEMENT**.

12.    The request to preclude the introduction of medical records without a foundation is **DENIED** as overbroad and without sufficient context. If a custodian or other qualified witness testifies that the conditions of Rule 803(6) are met, or if the parties stipulate that those conditions are met, medical records may be admitted generally—subject to specific objections pertaining to particular portions or entries as to hearsay within hearsay or standard Rule 403 balancing of prejudice. But as the Court previously stated, it cannot make generalized determinations on medical records *en masse*.

13.    The request to exclude mortality tables is **DENIED**. *See Mokris v. United States*, No. 2:20-cv-34, 2021 WL 6135191, at *3 (M.D. Fla. Dec. 29, 2021) (Steele, J.) (taking judicial notice of average life expectancy, though noting that it does not establish a particular plaintiff's life expectancy).

14.    The request to allow rebuttal experts to remain in the courtroom and exempt them from the rule of sequestration is **DENIED**. The experts are all on notice of each other's opinions, and their testimony will be limited to their properly disclosed opinions in their reports under Rule 26, so there is no need for them to be in the courtroom. *See United States v. Graham*, 123 F.4th 1197, 1257 (11th Cir. 2024) ("District courts have broad discretion to sequester witnesses before, during, and after their testimony.").

So Lockheed's motion in limine (Doc. 625) is **GRANTED IN PART, DENIED IN PART, AND TAKEN UNDER ADVISEMENT IN PART** as set forth above.

### III.    Universal

The Court held the final pretrial conference ("PTC") in this matter on February 19. (Doc. 595.) At that time, trial was set for the March term and Defendant Universal City Property Management Company III, LLC ("Universal") was—and remains—part of the case.

But counsel of record for Universal, Ryan Kelly McLemore, Esq., as Universal's longtime assistant general counsel and Michael R. Fidrych, Esq., as his sponsoring local counsel (*see* Doc. 607), did not appear at the PTC. Rather, a Mr. Byrd was present at the PTC to observe, but he did not lodge a formal appearance on behalf of Universal. (*See* Doc. 600.) Apparently, Mr. McLemore and Mr. Fidrych were operating under the assumption that Plaintiffs were dropping Universal from the case—though they had not at that point done so—so they did not have to appear at the PTC. Despite this assumption, Plaintiffs' counsel at first insisted he would not drop Universal, only agreeing to do so after further inquiry by the Court and representations from Lockheed's counsel during the hearing. (*Id.* at 70:19–78:15.)

So the Court ordered Mr. McLemore and Mr. Fidrych to show cause why they should not be sanctioned for failing to appear. (Doc. 597; *see* Doc. 81, p. 24 (lead trial counsel must attend in person unless excused)); Fed. R. Civ. P. 16(f)(1)(A) (court may sanction attorney who fails to appear at pretrial

7

conference); *see also* Local Rule 2.02(c) (lawyer cannot abandon action without leave of court). Counsel responded, asserting they "understood—with reasonable basis" that Universal was "on the verge of being dismissed," and "[t]hat belief proved well-founded" given Plaintiffs' later agreement to drop Universal. (Doc. 607, p. 3.) They further asserted that they were not "consulted or included in the drafting" of the pretrial materials, indicating their "dwindl[ing]" participation in the case. (*Id.* at 2–3.) They say they learned "less than two full days" before the PTC that they would not be dismissed beforehand, though they acknowledge they received "the PACER email of the actual notice" for the hearing. (*Id.* at 4.) Given this purportedly short timeframe, Mr. McLemore stated that he was unable to attend because he had his children in his care and could not get a flight, and Mr. Fidrych was unable to attend due to "personal circumstances." (*Id.* at 4–5.)

The Court is wholly unsatisfied with this response. Clearly, counsel knew Universal had not **yet** been dismissed from the case. Up through the dispositive motions phase, they were filing "me too" motions joining Lockheed's filings, indicating they knew Universal still had to defend itself. (*See* Doc. 495.) To say they were not "consulted" in the negotiation of the pretrial materials is puzzling; they were **required** to participate in that meeting, as they represented a party still being sued. There was no stipulation in hand before the PTC. The protestation that they only learned they had to attend two days beforehand is laughable, as they received

8

notifications from the docket about the hearing long before. And given Mr. Morgan's representations at the PTC, there was no guarantee that Universal would be dismissed from the case at all. Had the Court not made further inquiry, it is entirely possible Universal would still be on the hook to go to trial, with no attorney there to argue on its behalf. There simply is no excuse for not showing up and leaving their client unrepresented.

So Ryan Kelly McLemore, Esq., and Michael R. Fidrych, Esq., are **SANCTIONED**. *See* Fed. R. Civ. P. 16(f)(1)(A). They are each **DIRECTED** to deposit a $500 fine into the registry of the Court. They are also each **DIRECTED** to attend one continuing legal education course on the topic of ethics and to certify to this Court in writing that they have done so. The Order to Show Cause (Doc. 597) is **DISCHARGED** with these sanctions.

After the show cause response, Plaintiffs, Lockheed, and Universal filed a stipulation purporting to amend the pleadings under Rule 15 to dismiss the claim against Universal. (Doc. 610.) The amendment deadline was in February 2022 (Doc. 81), so the procedurally appropriate vehicles for this dismissal were either a motion asking the Court for leave to amend with good cause, *see* Fed. R. Civ. P. 16(b)(4); *see also* Fed. R. Civ. P. 16(c)(2)(B), or a self-executing Rule 41 stipulation, *see* Fed. R. Civ. P. 41(a)(1)(A)(ii); *City of Jacksonville v. Jacksonville Hosp. Holdings, L.P.*, 82 F.4th 1031, 1036 (11th Cir. 2023) ("Rule 41(a) allows a district court to

dismiss all claims against *a particular defendant*." (cleaned up)). *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 n.2 (11th Cir. 1998) ("[W]hen a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide . . . ."). Nevertheless, the Court construes the stipulation (Doc. 610) as a motion, grants leave to amend, and **DISMISSES WITH PREJUDICE**[5] Plaintiffs' claims against Universal.

Plaintiffs and Lockheed then filed a joint motion to update the case caption to remove Universal. (Doc. 611.) That motion is **GRANTED**. The Clerk is **DIRECTED** to update the docket to match the caption above and to terminate all parties who are not in the current caption. In court, the short-form version of the caption will be read as: *Benjamin Johnson et al. v. Lockheed Martin Corporation*.

## IV.   Impeachment

Plaintiffs move to clarify that impeachment materials need not be disclosed to the other side before trial and need not be included on the exhibit list. (Doc. 663.) Lockheed opposes. (Doc. 669.) Though the Court's Case Management and Scheduling Order ("CMSO") and the rules make the outcome clear, this motion (Doc. 663) is nevertheless **GRANTED**. The CMSO makes explicit that impeachment deposition material need not be designated before trial. (Doc. 81,

---

[5] The stipulation did not state whether the claims were intended to be dismissed with or without prejudice, but given that the case is on the eve of trial, dismissal with prejudice is appropriate.

p. 21); *see also* Local Rule 3.06(b)(8). Nor is impeachment material required to be disclosed during discovery as a general matter. *See* Fed. R. Civ. P. 26(a)(1)(A)(i), (a)(3)(A). Nor has it ever been the Court's practice to require the disclosure of such material, which necessarily only becomes relevant at trial once there is something to impeach.

## V.   Demonstratives

Plaintiffs move to modify the Court's requirement that demonstratives be disclosed to the other side before trial (in fact, they were supposed to be disclosed at the pretrial meeting months ago), asking instead that the Court permit the demonstratives to be revised during trial and disclosed to the other side 48 hours before use, given the length of the trial. (Doc. 664.) Lockheed opposes, noting that the last time they agreed to late revisions of demonstratives, Plaintiffs' counsel produced "*hundreds* of *new* slides on the day objections were due." (Doc. 670.)

This case was supposed to be ready for trial on the date of the PTC, February 19. It is April 21. Trial begins in less than a week. As of the last hearing on these demonstratives on April 13, Plaintiffs' counsel did not know whether particular demonstratives would be used in opening, examinations, or closing. This is **NOT** readiness for trial.

The CMSO is clear: "It is imperative that the parties disclose their respective demonstrative aids in the exact form they will be used at trial." (Doc. 81, p. 19 n.8.)

Minor revisions to conform demonstratives to ongoing evidentiary rulings and testimony at trial is one thing—an easy thing that the Court expects the parties to work out as a matter of courtesy and professionalism without the Court's intervention. Minor revisions of existing aids to adjust for testimony or rulings are permissible. Sandbagging with a new, whole-cloth creation is not.

So this motion (Doc. 664) is **DENIED**. All demonstratives must be disclosed to the other side **within 48 hours of this Order**. Any demonstrative affected by the Court's ruling following Thursday's hearing must be disclosed **within 48 hours of that ruling**. Any demonstrative intended to be used during opening statements must be disclosed to the other side absolutely no later than **Friday, April 24, 2026, at 5:00 p.m.** The parties are explicitly **CAUTIONED** not to make any reference in demonstratives during openings to any material about which the Court has reserved ruling. Requests to make substantial revisions to any demonstrative must be made to the Court during trial **at least 48 hours before** its intended use; requests to add entirely new demonstratives not timely disclosed by these deadlines will be summarily denied.

This Order does not impact No. 12 of Plaintiffs' limine motion or Nos. 10 and 11 of Lockheed's limine motion seeking rulings on demonstratives already presented to the Court, which items have been referred for Judge Irick's disposition. (*See* Doc. 655.) A ruling on those items will be issued in a separate

order. All demonstratives affected by that forthcoming ruling must be revised and disclosed to the other side **within 48 hours of that ruling**.

\* \* \*

The Court is puzzled and disappointed that the experienced counsel in this case, now pending for five years, appear so unprepared for trial. Limine motions that had to be delayed and augmented because counsel did not meet-and-confer properly, a motion to remand filed five years after removal, multiple eleventh-hour motions seeking clarification of procedures that have been in place for ages, demonstratives not yet created, and a significant preliminary question of law surfacing only after counsel submitted multiple rounds of instructions asking the jury to decide the issue: not an auspicious beginning.

**IT IS SO ORDERED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on April 21, 2026.



ROY B. DALTON, JR.
United States District Judge